462 N.W.2d 631 (1990)
In the Interest of T.J.O., a Child.
S.O., by her parents and natural guardians, M.O. and A.O., Petitioners and Appellees,
v.
R.L.H., R.L.H., and D.M.H., Respondents and Appellants.
Civ. No. 900158.
Supreme Court of North Dakota.
November 13, 1990.
*632 Schuster, Brothers & Beauchene, Fargo, for petitioners and appellees; James R. Bros. (argued).
Leslie Johnson-Soetebier (argued), Fargo, for respondents and appellants.
ERICKSTAD, Chief Justice.
R.H. (hereinafter "Robert," a pseudonym) and his parents R.H. and D.H. (hereinafter "Ray" and "Donna," pseudonyms) appeal from a juvenile court order terminating Robert's parental rights to T.J.O. (hereinafter "Thomas," a pseudonym). We affirm.
In April 1989, S.O. (hereinafter "Susan," a pseudonym) gave birth out of wedlock to Thomas. It is undisputed that Robert is Thomas' father. At the time of Thomas' birth Robert was 14 years old and Susan was 16 years old. Susan resides with her parents M.O. and A.O. (hereinafter "Mark" and "Amy," pseudonyms). Robert resides with his parents.
Susan has had physical custody of Thomas since his birth, but she plans to voluntarily consent to the termination of her parental rights and place Thomas for adoption, providing Robert's parental rights are terminated.[1] Susan and her parents filed a petition requesting the juvenile court to terminate Robert's parental rights. Robert refuses to voluntarily terminate his parental rights. He prefers that Thomas be raised by Susan but would agree to take physical custody of Thomas rather than have Susan place Thomas for adoption.
For the court to terminate parental rights under Subsection 27-20-44(1)(a), N.D.C.C., it must be established by clear and convincing evidence that: (1) the child is a deprived child; (2) the conditions and causes of deprivation are likely to continue or will not be remedied; and (3) by reason of the continuous or irremediable conditions *633 and causes the child is or will probably suffer serious physical, mental, moral, or emotional harm. In reviewing the decision of the juvenile court to terminate parental rights we examine the evidence in a manner similar to trial de novo, affording the juvenile court's findings appreciable weight, but not being bound by them. In Interest of L.J., 436 N.W.2d 558 (N.D. 1989).
The juvenile court found that Thomas is a deprived child because Robert lacks the skills and commitment necessary to parent Thomas; that the conditions and causes of Thomas' deprivation are not likely to be remedied within a reasonable time because it is unlikely that Robert will acquire minimum parental skills within 3 to 5 years; and that as a consequence of this continued deprivation Thomas would probably suffer serious mental and emotional harm. Consequently, the court terminated Robert's parental rights. Robert asserts on appeal that the court erred in finding by clear and convincing evidence that Thomas is a deprived child.
Under Subsection 27-20-02(5)(a), N.D.C.C., a deprived child is defined as a child who:
"Is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health, or morals, and the deprivation is not due primarily to the lack of financial means of the child's parents, guardian, or other custodian ...."
The definition of a deprived child is broad enough to encompass a child whose parent, while never having had the opportunity to care for the child, is shown to be presently incapable of providing proper parental care for the child. In re H., 206 N.W.2d 871 (N.D.1973). A child may be found to be a deprived child with regard to a parent even though that child has at all times received adequate foster or other proper care from a source other than that parent. See In Interest of K.P., 267 N.W.2d 1 (N.D.1978). Prognostic evidence may be relied upon to find that a child is a deprived child if it shows that the parent, although not having custody of the child, would be presently unable to supply physical and emotional care for the child, with the aid of available social agencies, if necessary, and that the inability would continue for sufficient time to render improbable the successful assimilation of the child into a family if that parent's rights were not presently terminated. In Interest of J.A.L., 432 N.W.2d 876 (N.D.1988).
Robert has never had physical custody of Thomas and it is unlikely, irrespective of the decision in this case, that he will have physical custody in the foreseeable future. From his birth, Thomas has been in Susan's physical custody, residing with Susan and her parents in their home. Although Susan wants to place Thomas for adoption, she would agree to keep physical custody of Thomas rather than have him placed in Robert's custody. Robert and his parents have clearly expressed their desire that Thomas remain in Susan's physical custody to be raised by Susan and her parents, but they would agree to raise Thomas rather than have him placed in an adoptive home. The gist of the parties' positions is that neither parent wants to have primary custody of Thomas or to raise him. Each parent would agree to take Thomas only as a secondary preference or "fallback" position. Neither has demonstrated an unconditional love and desire to parent Thomas that would assure him adequate care necessary for his physical, mental, and emotional health and wellbeing.
Dr. Neil Clark, a licensed consulting psychologist, was appointed by the juvenile court to evaluate Robert and Susan. Dr. Clark testified that Susan does not have the necessary commitment to parent Thomas and that her lack of commitment could be problematic to Thomas' development resulting in "confusion and turmoil" and a lack of capacity by Thomas to develop intimate and caring relationships. Dr. Clark testified that Robert, at age 14, lacks knowledge and skills to adequately parent Thomas. He testified that Robert is an eighth grader who has struggled in school and has been placed in a learning disability program. Robert is also struggling with *634 personal problems involving conflicts with the juvenile authorities, who have placed him on probation on more than one occasion, and also involving experimentation with cigarettes, alcohol and drugs.
Lisa Noah, a probation officer, testified that through her conversations with Robert she did not find any commitment on Robert's part to be a parent to Thomas but only saw a desire by Robert to "visit this baby." Noah also testified that Susan expressed a lack of desire to parent Thomas and that in Noah's opinion Susan could not provide necessary support and care for Thomas. Noah testified that in her opinion neither Robert nor Susan could provide minimally acceptable care for Thomas now or in the foreseeable future.
Susan also testified at the hearing. She agreed with Dr. Clark's assessment that she lacks a commitment to be a parent to Thomas. She also testified that Robert has expressed to her that it would be best for Thomas "to be given up" but that Robert felt that it would be too stressful on his parents, Ray and Donna, if that were done. Susan testified that in her opinion Robert is incapable of providing proper physical or emotional care for Thomas and that Robert could not provide a stable environment to meet Thomas' needs.
It is undisputed that Robert is struggling to cope with personal problems of his own as a young teenager and that he lacks the commitment or the skills necessary to parent Thomas. Susan concedes that she lacks the commitment to parent Thomas and desires to have Thomas placed for adoption. In addition, neither parent, nor the immediate families, have expressed a primary desire or preference to have custody of Thomas. Under the unique circumstances present in this case, we believe that the evidence clearly and convincingly shows that Thomas is a deprived child.
Robert asserts that the juvenile court erred in failing to adequately consider the secondary sources of assistance that he would have available to him for parenting Thomas. The juvenile court made an express finding that Robert "would have a support system available to him, namely his parents, siblings, and social agencies." The juvenile court also found that although Robert is basically a normal teenage boy, Robert has experienced "a past suspension from school, an early history of legal conflicts, and experimentation with alcohol and marijuana, and has had little parental control by his own parents." [Emphasis added]. The trial court found in effect, that in spite of the secondary support available to Robert, he could not give Thomas a home in the foreseeable future that would provide him with minimally adequate care. We conclude that there is clear and convincing evidence in the record to support these findings by the juvenile court.
Dr. Clark testified that, although Robert has "a secondary support system in his parents," Robert does not have the maturity level, the parenting knowledge, or the commitment to assume parental responsibilities for Thomas for "at least another four to five years." The juvenile court concluded that it would be unlikely that Robert could acquire minimal standards of parenting skills necessary to care for Thomas "within three to five years." We conclude that the evidence is clear and convincing that the causes and conditions of the deprivation would likely continue for a sufficient time to render improbable the successful assimilation of Thomas into a family if Robert's rights were not presently terminated.
We also conclude that there is clear and convincing evidence that Thomas will suffer serious harm if Robert's parental rights are not terminated. This case is distinguishable from the factual situation in Matter of Adoption of K.S.H., 442 N.W.2d 417 (N.D.1989), in which this court agreed that the father's parental rights should not be terminated because there was insufficient evidence that the child would suffer serious harm if the father's parental rights were not terminated.
In K.S.H., supra, the child's paternal grandparents petitioned to terminate their son's parental rights to his child. The child, who at the time of the trial court proceedings was 14 years old, resided with *635 his father in the home of the paternal grandparents where he had received loving care his entire life. The child's father had been hospitalized for mental illness diagnosed as schizophrenia and was on medication and receiving counseling on both an inpatient and outpatient basis. The child had developed a relationship with his father, but asked the grandparents to adopt him to stem his own feelings of insecurity. The grandparents initiated adoption proceedings and attempted to terminate the father's parental rights. In denying the request, this court concluded:
"The trial court recognized in the instant case that the child has received loving care from his grandparents and that the situation will not be changed by whatever decision the trial court made regarding termination.
* * * * * *
"[W]e do not believe that it has been established that the child has suffered or will probably suffer serious harm if the parental rights of his father are not terminated." 442 N.W.2d at 420-421.
The factual circumstances in this case are much different than those in K.S.H. Thomas does not now reside in a secure environment in which either parent, together with the support of sources available to them, has an ability or a commitment to raise Thomas and to provide him with all of his physical and emotional needs. Thomas' mother desires to place Thomas for adoption. Thomas' father has neither the commitment nor the ability to parent Thomas and, together with his own parents, has expressed a preference that Thomas' mother and maternal grandparents raise Thomas.
Under these circumstances we believe the evidence is clear and convincing that Thomas will suffer serious harm if Robert's parental rights are not terminated. Thomas is in present need of a secure and permanent home with parents who can provide him and who desire to provide him with loving parental care. Robert cannot provide that care for Thomas now or in the reasonably foreseeable future.
In accordance with this opinion we affirm the juvenile court order terminating Robert's parental rights.
GIERKE, VANDE WALLE and LEVINE, JJ., concur.
MESCHKE, J., concurs in the result.
NOTES
[1] This court was informed during oral arguments that subsequent to the juvenile court proceedings Thomas has been placed in a potential adoptive home.