643 N.W.2d 699 (2002)
2002 ND 78
In the Interest of J.R. and L.R., minor children.
Eva Rohr, Petitioner and Appellee,
v.
J.R., a child, L.R., a child, Respondents,
J.R., their father, Respondent and Appellee, and
B.K.B., their mother, Respondent and Appellant.
No. 20010264.
Supreme Court of North Dakota.
May 14, 2002.
*700 Loren C. McCray, Hebron, N.D., for respondent and appellant.
Dann E. Greenwood, Greenwood & Ramsey, PLLP, Dickinson, N.D., for respondent and appellee.
Owen K. Mehrer (submitted on brief), Assistant State's Attorney, Courthouse, Dickinson, N.D., for petitioner and appellee.
MARING, Justice.
[¶ 1] B.K.B. appeals from a juvenile court order that granted Stark County Social Services custody and control of her minor children, J.R. and L.R., for a period of 12 months. We affirm.

I
[¶ 2] J.R. ("John," a pseudonym) is a resident of North Dakota, and B.K.B. ("Barbara," a pseudonym) is a resident of Mississippi. John and Barbara never married, but they lived together for about 15 years in North Dakota. In that time, they had three children together, L.R. ("Linda," a pseudonym), J.R. ("James," a pseudonym), and L.R. ("Laura," a pseudonym). Linda is 18 years old, having been born on February 5, 1984. James is 13 years old, having been born on October 2, 1988. Laura is 11 years old, having been born on November 30, 1990. John and Barbara eventually ended their relationship, and Barbara obtained custody of the three children. In December of 1999, Barbara moved from North Dakota to Mississippi with James and Laura. Linda remained in North Dakota with John.
[¶ 3] On June 1, 2001, James and Laura returned to North Dakota for summer visitation with John. On July 23, 2001, while James and Laura were in North Dakota visiting John, John reported to Stark County Social Services that he suspected James and Laura were being abused or neglected while they were living in Mississippi with Barbara. After investigating the report, Stark County Social Services requested an order for temporary shelter care. A juvenile court referee granted the order on July 27, 2001. The order granting temporary shelter care stated that the children had indicated to John and Stark County Social Services that they did not want to return to Mississippi with Barbara because they were afraid of her and because they had found marijuana, cocaine, and drug paraphernalia in their mother's home. Additionally, the order stated that James indicated he would physically injure himself if he were forced to return to Mississippi.
[¶ 4] On July 31, 2001, a hearing was held on the temporary shelter care order. Subsequent to the hearing, the juvenile court found probable cause to believe that James and Laura were deprived children. As a result, the juvenile court granted *701 legal custody of the children to Stark County Social Services for a period of 30 days, during which time the children were to receive full psychological evaluations at Badlands Human Service Center.
[¶ 5] On August 20, 2001, a juvenile petition was filed which alleged James and Laura were deprived children and requested the juvenile court to make a determination concerning the care, custody, and control of the children. On September 5, 2001, John filed a return to the juvenile petition in which he concurred with the allegations made in it. On September 20, 2001, Barbara filed a response to the juvenile petition in which she requested that the petition be dismissed.
[¶ 6] Subsequent to a hearing on the petition, the juvenile court found James and Laura were in need of treatment as deprived children and Barbara was unable to provide the care or control necessary for the children's mental and emotional health. The juvenile court ordered the care, custody, and control of James and Laura be granted to Stark County Social Services for a period of 12 months. Barbara filed an appeal from the order on October 18, 2001.

II
[¶ 7] When an appeal is taken from a juvenile court order, this Court reviews the "files, records, and minutes or transcript of the evidence of the juvenile court." See N.D.C.C. § 27-20-56(1). Although this standard of review is similar to a trial de novo, N.D.C.C. § 27-20-56(1) requires us to give "appreciable weight to the findings of the juvenile court." Furthermore, we have recognized that the juvenile court is in a better position than this Court to observe the candor and demeanor of the witnesses. See In re D.R., 2001 ND 183, ¶ 2, 636 N.W.2d 412.
[¶ 8] On appeal, Barbara argues the trial court erred in granting custody of James and Laura to Stark County Social Services because there was not clear and convincing evidence showing that the children were deprived.
[¶ 9] Section 27-20-02(8), N.D.C.C., provides in part:
"Deprived child" means a child who:
a. Is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health, or morals, and the deprivation is not due primarily to the lack of financial means of the child's parents, guardian, or other custodian....
See N.D.C.C. § 27-20-02(8)(a). As used in N.D.C.C. § 27-20-02(8)(a), the phrase "proper parental care" means the "minimum standards of care which the community will tolerate." See In Interest of K.R.A.G., 420 N.W.2d 325, 327 (N.D.1988). A finding of deprivation under N.D.C.C. § 27-20-02(8) must be supported by clear and convincing evidence. See N.D.C.C. § 27-20-29(3); see also Eastburn v. B.E., 545 N.W.2d 767, 770 (N.D.1996). If a child is found to be deprived, the juvenile court may temporarily transfer legal custody of the child to the agency or person best suited for the protection and welfare of the child. See N.D.C.C. § 27-20-30; see also In the Interest of C.M., 532 N.W.2d 381, 383 (N.D.1995).
[¶ 10] At the hearing on the juvenile petition, the children's guardian ad litem testified the children told her they had found drugs and drug paraphernalia in Barbara's home. She testified the children said they had been left home by themselves all night on different occasions. She also testified James indicated he would commit suicide if he were forced to return to Mississippi.
*702 [¶ 11] The psychologist who evaluated the children on behalf of Stark County Social Services testified Laura told her she was afraid of Barbara when she drank and she was scared of her brother being hit by Barbara or Barbara's boyfriend. She also testified James told her he would kill himself if he were forced to return to Mississippi and "he was afraid to go live with his mom and her boyfriend because he was hit, because they use drugs and alcohol." Based on her evaluations of the children, the psychologist concluded that James suffers from a major depressive disorder and that Laura suffers from an anxiety disorder. She testified the children were in need of treatment and needed to be in an environment where they felt safe. She testified the children indicated they did not feel safe in Barbara's home.
[¶ 12] The social worker assigned to the case by Stark County Social Services testified the children told her they had found drugs and drug paraphernalia in Barbara's home. She testified James told her he had begun to vomit after witnessing Barbara and her boyfriend having sex. She testified James told her he tried to call John after witnessing this, but Barbara grabbed him and threw him into the bedroom, causing him to hit his head on the bars on the bed. She testified Linda told her that while she was living with Barbara, Barbara's boyfriend came home drunk one night and crawled into bed with her and began touching her. She testified Linda reported the incident to Barbara, yet Barbara did nothing about it. The social worker also testified Laura told her that Barbara's boyfriend exposed himself to her on one occasion.
[¶ 13] Barbara testified the allegations the children made to Stark County Social Services were exaggerated, and she denied using drugs or having a drinking problem. She testified the children were doing well in school in Mississippi and were well cared for. She testified she called the police three to four times in one year due to domestic disputes with her boyfriend. She testified she kicked her boyfriend out of her house and that he is no longer part of her life. However, she admitted she has kicked him out of her house before and allowed him to come back again. Furthermore, she also admitted she allowed him to ride with her when she drove from Mississippi to North Dakota for the shelter care hearing in July.
[¶ 14] In previous cases, we have affirmed juvenile courts' findings of deprivation under circumstances similar to those presented in this case. In Eastburn, this Court concluded there was clear and convincing evidence of deprivation where the evidence showed the children suffered from psychological and emotional problems due to their mother's failure to provide them with a stable home environment and it also showed the mother would not be able to provide the children with the environment they would need to recover from their problems. See 545 N.W.2d at 771. In In re D.F.G., 1999 ND 216, ¶ 14, 602 N.W.2d 697, we concluded a child was deprived where the mother failed to provide the child with "adequate stability and care" due to her alcohol and drug use, mental illness, involvement with an abusive boyfriend, frequent moves, and her repeated decisions to place the child in the custody of social services. See id. at ¶¶ 14-17. We also noted that the evidence showed the child suffered from psychological problems which were "exacerbated by [the mother's] inability to provide stability." See id. at ¶ 18. In In re T.K., 2001 ND 127, ¶ 13, 630 N.W.2d 38, we concluded a mother and father failed to "meet minimum standards for providing a safe and loving environment" for their children where the evidence showed the father blew marijuana smoke in the face of one child and gave the child alcohol and the mother *703 handled the child roughly and threatened to harm the child. See id. at ¶ 13. Additionally, the evidence showed the parents provided the children with a "violent, chaotic home situation" which caused developmental delay in one of the children. See id.
[¶ 15] The evidence presented in this case showed Barbara has failed to provide the children with a safe and stable environment due to her drug and alcohol use and her on and off again relationship with a man who allegedly molested Linda and exposed himself to Laura. According to the evidence, James and Laura have developed psychological and emotional problems. Evidence presented at the hearing showed the children do not feel safe with Barbara and that Barbara has not been able to provide them with the stable environment they need to recover from their problems. Although Barbara presented evidence to the contrary, this does nothing more than raise a credibility issue which the juvenile court, having the opportunity to observe the candor and demeanor of the witnesses, is in a better position than this Court to resolve. See In re D.R., 2001 ND 183, ¶ 2, 636 N.W.2d 412. Furthermore, Barbara admitted that the children are generally honest and every witness who interviewed the children on behalf of Stark County Social Services testified the children's statements were reliable.

III
[¶ 16] When appreciable weight is given to the juvenile court's findings and the record is reviewed as a whole, we conclude the evidence clearly and convincingly establishes that James and Laura are deprived children, and no evidence was presented which indicated their deprivation was due primarily to Barbara's lack of financial means. See N.D.C.C. § 27-20-02(8)(a) (defining a deprived child as one who is without the "care or control necessary for the child's physical, mental, or emotional health, or morals" and whose deprivation is not due primarily to the lack of financial means of the child's parent or guardian). We, therefore, affirm the order of the juvenile court.
[¶ 17] GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.
NEUMANN, Justice, concurring.
[¶ 18] I concur in the majority's opinion, but only because the children have extensive and recent contact with the State of North Dakota. As the majority points out, both these children lived their entire lives in North Dakota prior to December 1999, and in the summer of 2001 were legitimately in North Dakota again, visiting their father, who continues to reside in this state. Their mother's custody of these children was the result of a North Dakota court order, as the mother acknowledged in her brief to this Court.
[¶ 19] Sections 27-20-39 and 27-20-40 of our Uniform Juvenile Court Act permit the transfer of nonresident children to a court of another state for disposition. Section 27-20-39 provides that if the juvenile court finds a child is deprived and is the resident of another state with statutory provisions substantially similar to our sections 27-20-39 and 27-20-40 "the court may defer hearing on disposition and request by any appropriate means the juvenile court of the county of the child's residence ... to accept jurisdiction of the child." The two children in this case were no longer North Dakota residents. Clearly, if Mississippi has statutes similar to our own and if a Mississippi court had been willing to accept jurisdiction of these children, a transfer under 27-20-39 would have been appropriate. In light of the policies expressed in the Uniform Child Custody Jurisdiction and Enforcement *704 Act, N.D.C.C. ch. 14-14.1, and in the Parental Kidnapping Prevention Act, 28 U.S.C.A. § 1738A, policies fostering and sometimes requiring deference to the courts of other states that have a legitimate interest in the custody and well-being of their children, such a transfer might have been not only appropriate but desirable.
[¶ 20] I am convinced, under any of the possibly applicable laws, our juvenile court had jurisdiction to entertain this case, at least on an emergency basis. I don't believe this is a question of jurisdiction, but rather one of judicial humility. There are instances when good judgment and comity require that we limit our exercise of authority, even though we may have jurisdiction to act. Dealing with children who now reside in a sister state is certainly one of those instances. Unfortunately, nothing in this record indicates the possibility of action under section 27-20-39 was ever suggested to or considered by our juvenile court, and the possibility of such action was not raised to us in this appeal. I therefore concur.