Filed 8/28/18 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2018 ND 200

Interest of J.B., a child

Ashley Lill, L.S.W., Cass County, Petitioner and Appellee

v.

J.B., child, and Lisa Borseth, Guardian ad Litem, Respondents

and

N.B., father, and J.G., mother, Respondents and Appellants

No. 20170460

Appeal from the Juvenile Court of Cass County, East Central Judicial District, the Honorable Scott A. Griffeth, Judicial Referee.

AFFIRMED.

Opinion of the Court by Tufte, Justice.

Pam H. Ormand, Assistant State’s Attorney, Fargo, N.D., for petitioner and appellee; submitted on brief.

Jay R. Greenwood, Fargo, N.D., for respondent and appellant N.B., father.

Daniel E. Gast, Fargo, N.D., for respondent and appellant J.G., mother.

Interest of J.B.

No. 20170460

Tufte, Justice.

[¶1] N.B., the father, and J.G., the mother, appeal from a juvenile court order finding their child, J.B., to be a deprived child and granting legal custody to Cass County Social Services. We conclude clear and convincing evidence supports the juvenile court’s finding that J.B. was deprived. We affirm.

I

[¶2] In 2014, J.G. had two children removed from her care in Grand Forks and ultimately pled guilty to four felony counts of child neglect or abuse. J.G.’s parental rights to those two children were involuntarily terminated in Grand Forks in 2016. N.B. was not the father of the two children. In February 2017, J.G. was charged with failing to register as an offender against children, a felony, after she moved and failed to register her address with the Fargo police department. She pled guilty and was sentenced in September 2017 to serve ninety days of a one-year jail term with credit for time served. She completed her sentence on November 30, 2017.

[¶3] In August 2017, shortly after J.B.’s birth, Cass County Social Services removed J.B. from the custody of J.G. and N.B. In September 2017, J.B. was released to N.B.’s physical custody under court order. In October 2017, Social Services petitioned the juvenile court to find J.B. was a deprived child. J.G. was serving her sentence at that time. On November 30, 2017, the court held a trial, during which social workers from Cass County Social Services and Grand Forks County Social Services testified. The court also received as evidence copies of J.G.’s 2017 criminal judgment for failing to register as an offender against children, the 2014 amended information for four felony counts of child neglect or abuse, and the 2016 findings and order terminating her parental rights to her two previous children.

[¶4] In December 2017, the juvenile court issued its findings of fact and an order. The court found J.B. was in need of treatment or rehabilitation as a deprived child, granted legal custody to Cass County Social Services for a period of nine months, and granted physical custody to N.B. conditioned on J.G.’s not residing in the home until approved by Cass County Social Services. The court also ordered N.B. and J.G. to cooperate with a treatment plan that Cass County Social Services developed for the family to meet the needs of the child.

II

[¶5] Under N.D.C.C. § 27-20-03(1)(a), the juvenile court has exclusive jurisdiction over “[p]roceedings in which a child is alleged to be . . . deprived.” This Court has recently reiterated the standard of review for a juvenile court decision:

A juvenile court’s findings of fact should not be set aside, unless clearly erroneous. 
In re T.T.
, 2004 ND 138, ¶ 5, 681 N.W.2d 779. “A finding of fact is clearly erroneous under N.D.R.Civ.P. 52(a) if there is no evidence to support it, if it is clear to the reviewing court that a mistake has been made, or if the finding is induced by an erroneous view of the law.” 
Akerlind v. Buck
, 2003 ND 169, ¶ 7, 671 N.W.2d 256. “On appeal, we review the files, records, and minutes or the transcript of the evidence, and we give appreciable weight to the findings of the juvenile court.” 
In re B.B.
, 2010 ND 9, ¶ 5, 777 N.W.2d 350 (citation and quotation marks omitted). Further, this Court gives due regard to the trial court’s opportunity to judge the credibility of the witnesses. N.D.R.Civ.P. 52(a)(6).

Interest of P.T.D.
, 2018 ND 97, ¶ 5, 909 N.W.2d 692 (quoting 
Interest of J.A.H.
, 2014 ND 196, ¶ 7, 855 N.W.2d 394).

III

[¶6] Both N.B. and J.G. argue the juvenile court erred in finding clear and convincing evidence exists to support a finding that J.B. was deprived.

[¶7] Under N.D.C.C. § 27-20-30, when the juvenile court finds a child to be deprived, the court may “temporarily transfer legal custody of the child to the agency or person best suited to the protection and welfare of the child.” 
J.A.H.
, 2014 ND 196, ¶ 8, 855 N.W.2d 394. Specifically, the court may “transfer temporary legal custody to . . . [t]he director of the county social service board or other public agency authorized by law to receive and provide care for the child.” N.D.C.C. § 27-20-30(1)(b)(2).

[¶8] A “deprived child” means a child who “[i]s without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child’s physical, mental, or emotional health, or morals, and the deprivation is not due primarily to the lack of financial means of the child’s parents, guardian, or other custodian[.]” N.D.C.C. § 27-20-02(8)(a). “As used in N.D.C.C. § 27-20-

02(8)(a), the phrase ‘proper parental care’ means the ‘minimum standards of care which the community will tolerate.’”  
In re J.R.
, 2002 ND 78, ¶ 9, 643 N.W.2d 699; 
see also
 
J.A.H.
, 2014 ND 196, ¶ 8, 855 N.W.2d 394.

[¶9] “The definition of a deprived child is broad enough to encompass a child whose parent, while never having had the opportunity to care for the child, is shown to be presently incapable of providing proper parental care for the child.” 
Interest of K.B.
, 2011 ND 152, ¶ 11, 801 N.W.2d 416 (quoting 
Interest of T.J.O.
, 462 N.W.2d 631, 633 (N.D. 1990)). Additionally, “[p]arental cooperation is pertinent to determining whether deprivation will continue.” 
P.T.D.
, 2018 ND 97, ¶ 4, 909 N.W.2d 692. “The juvenile court may consider a parent’s pattern of behavior and whether a parent’s conduct demonstrates a serious indifference towards parental responsibilities and obligations.” 
Id. 
The court’s finding of deprivation must be supported by clear and convincing evidence. 
Interest of T.T.
, 2004 ND 138, ¶ 5, 681 N.W.2d 779.

[¶10] J.G. argues the State offered no proof that her child, J.B., meets the definition of a “deprived child” under N.D.C.C. § 27-20-02(8)(a). She contends she should not be subject to having a child removed simply because of her past actions and history with child protection. She asserts the father, N.B., has no prior child protection history and no evidence exists to allow J.B. to be removed from the care of N.B. She also contends that, although N.D.C.C. § 27-20-32.2(1) requires Social Services to undertake “reasonable efforts” to prevent removal of a child from the family, N.D.C.C. § 27-20-32.2(4)(b) does not require “reasonable efforts” to reunify the family when a parent’s rights have been involuntarily terminated with respect to another child of the parent. She argues that if this Court does not overrule the juvenile court, the State would be able to remove any child solely because of a prior involuntary termination.

[¶11] N.B. similarly argues the juvenile court erred in finding that clear and convincing evidence supports a finding of deprivation, because none of the petition’s allegations or the court’s findings were about J.B., the child at issue. Relying on 
Interest of R.S.
, 2010 ND 147, 787 N.W.2d 277, he argues the record, findings, and petition lack any actual allegation or proof of harm to J.B. He contends the court’s deprivation finding cannot stand because the child has not actually lacked proper parental care or control and the only referenced allegation of the “possibility of harm” is based on the mother’s prior treatment of her other children.

[¶12] In 
Interest of R.S.
, 2010 ND 147, ¶ 17, 787 N.W.2d 277, a majority of this Court held that the juvenile court erred in finding clear and convincing evidence that R.S. was a deprived child. R.S. was a one-year-old child whose seventeen-year-old mother, A.D.S., had been placed in the custody of social services and lived with her father in Fargo. 
Id.
 at ¶ 2. A.D.S. left her father’s home with R.S. and failed to inform social services of their location. 
Id
. Police later found them at the home of A.D.S.’s mother’s boyfriend in East Grand Forks, Minnesota. 
Id
. In reversing the order for disposition, this Court held N.D.C.C. § 27-20-02(8)(a) does not provide that a child is deprived based on “a future possibility of harm where the child has not actually lacked proper parental care or control.” 
Id.
 at ¶ 16. This Court explained that the evidence had only “established social services feared A.D.S.’s behavior and decision-

making would ultimately deprive R.S. of proper parental care and control” and the evidentiary hearing “focused upon A.D.S.’s decision-making rather than whether those decisions were presently depriving R.S. of proper parental care and control.” 
Id.

[¶13] Unlike 
Interest of R.S.
, however, this case involves a newborn about to be in the custody of a mother who had been convicted of felony child neglect or abuse and whose rights to two other biological children had been involuntarily terminated almost fifteen months earlier, and a father who apparently was not concerned with the mother’s ability to provide proper parental care. We believe the evidence here goes beyond the lack of evidence discussed in the 
R.S.
 case and demonstrates a present lack of proper parental care and control.

[¶14] Here, the juvenile court received evidence that J.G.’s failure to follow her probation requirements led to an additional ninety-day jail sentence and evidence from Grand Forks County social workers about her prior child protection concerns and level of physical and emotional abuse and neglect. The court heard testimony about J.G.’s denials of her participation and involvement in the prior abuse, despite prior proceedings finding otherwise, and about her history of non-cooperation in services. The court also received evidence specifically establishing the father admitted that he knew of J.G’s prior involuntary termination of parental rights, that he has familial ties to that situation, and that he asserted he wanted to continue the relationship with the mother and to parent J.B. with her.

[¶15] We have said that the “primary purpose of N.D.C.C. ch. 27-20 is to protect the welfare of children.” 
K.B.
, 2011 ND 152, ¶ 16, 801 N.W.2d 416. This Court has explained that “a court ‘need not await the happening of a tragic event’ to protect a child, particularly when a sibling has been found to be deprived.” 
Id.
 (citations omitted). “[C]ourts have held that ‘abuse of one child is relevant to the care a parent will provide to other siblings.’” 
Id.
 at ¶ 17 (quoting 
In re L.B.
, 416 N.W.2d 598, 599 (S.D. 1987)). We have also said that “a juvenile court need not operate in a vacuum and may take judicial notice of orders in other proceedings.” 
T.T.
, 2004 ND 138, ¶ 10, 681 N.W.2d 779.

[¶16] Although future termination proceedings remain a possibility, the juvenile court’s deprivation finding here allows for the continued involvement of Social Services with access to the parents and child in providing a treatment plan. Generally,“[a]n order finding a child deprived and temporarily transferring custody of the child is not res judicata for purposes of determining whether the child is a deprived child in [subsequent] proceedings to terminate parental rights.” 
K.B.
, 2011 ND 152, ¶ 13, 801 N.W.2d 416 (quoting 
Interest of K.S.
, 2002 ND 164, ¶ 9, 652 N.W.2d 341). Moreover, despite J.G.’s concern that “reasonable efforts” to reunify the family may not be required, the testimony shows Social Services was in fact trying to provide services to the parents at the time of the hearing.

[¶17] In its order the juvenile court made sufficient findings regarding J.G.’s extensive prior child protection history, her four felony child neglect and abuse convictions, the termination of her parental rights to two other children, and her incarceration for failing to register as an offender against children. The court found J.G. has failed to accept responsibility for her prior criminal acts against children, does not demonstrate an understanding of the impact and consequences of her prior criminal acts, and continues to be required to register as an offender against children after being released from incarceration. The court also specifically found that despite evidence of his knowledge of J.G.’s history, N.B. plans to continue his relationship with J.G. and to parent the infant child with her. On this record we conclude that clear and convincing evidence supports the court’s finding that J.B. is without proper parental care or control.

[¶18] On these facts and circumstances, we conclude clear and convincing evidence supports the juvenile court’s finding that J.B. is a deprived child under N.D.C.C. § 27-20-02(8)(a).

IV

[¶19] The order is affirmed.

[¶20] Jerod E. Tufte

Daniel J. Crothers

Lisa Fair McEvers

I concur in the result.

Gerald W. VandeWalle, C.J.

Jensen, Justice, dissenting.

[¶21] The guardian ad litem provided testimony that N.B., J.B.’s father, is a good parent.  The guardian ad litem also testified she has confidence in N.B.’s ability to parent and that N.B. appears to have provided J.B. with a good home and stable environment.  J.B. was placed with N.B. prior to and during the deprivation proceedings.  J.B. has never been harmed while in the care of N.B.  With regard to N.B.’s ability to parent, the juvenile court concluded “[o]ther than his indication that he would allow [J.G.] to provide supervision for this child given the opportunity to do so, he’s done everything right.”  Given these facts, I am left with a definite and firm conviction that a mistake has been made with regard to the deprivation finding.  I conclude the determination that J.B. is a deprived child must be reversed.

[¶22] A “deprived child” is a child who:

Is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child’s physical, mental, or emotional health, or morals, and the deprivation is not due primarily to the lack of financial means of the child’s parents, guardian, or other custodian[.]

N.D.C.C. § 27-20-02(8)(a).  “[P]roper parental care” means “minimum standards of care which the community will tolerate.”  
Interest of D.Q.
, 2002 ND 188, ¶ 12, 653 N.W.2d 713 (quoting 
Interest of J.R.
, 2002 ND 78, ¶ 9, 643 N.W.2d 699).  A finding of deprivation must be supported by clear and convincing evidence.  
Interest of B.B.
, 2008 ND 51, ¶ 6, 746 N.W.2d 411.  “Clear and convincing evidence means evidence that leads to a firm belief or conviction the allegations are true.”  
Interest of A.B.
, 2009 ND 116, ¶ 16, 767 N.W.2d 817 (quoting 
Interest of M.B.,
 2006 ND 19, ¶ 13, 709 N.W.2d 11).

[¶23] On review, this Court will not overturn a juvenile court’s finding that a child is deprived unless the finding is clearly erroneous.  
B.B.,
 2008 ND 51, ¶ 4, 746 N.W.2d 411.  “A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support the finding, or if, on the entire record, we are left with a definite and firm conviction a mistake has been made.”  
Interest of T.A.,
 2006 ND 210, ¶ 11, 722 N.W.2d 548.  When a party appeals a juvenile court order, this Court reviews “the files, records, and minutes or transcript of the evidence,” and gives “appreciable weight to the findings of the juvenile court.”  N.D.C.C. § 27-20-56(1).

[¶24] The juvenile court’s conclusion that J.B. is deprived is contrary to the evidence that was provided during the hearing.  The essential fact for determining whether or not J.B. is deprived is consideration of whether or not J.B. is without “proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child’s physical, mental, or emotional health, or morals . . . .”  N.D.C.C. § 27-20-02(8)(a).  As noted above, the guardian ad litem assessed N.B. as a good parent and testified that N.B. has provided J.B. with a good home and stable environment.  The prior juvenile court shelter care orders placed J.B. in N.B.’s care.  Even the juvenile court concluded that, with the exception of allowing J.G. to have contact with J.B., N.B. has “done everything right.”

[¶25] The juvenile court’s only reservation regarding N.B. was the indication that N.B. has an intent to stay in a relationship with J.G. and desires J.G. to have a parental relationship with J.B.  However, N.B. has also indicated he is willing to live apart from J.G.  N.B. and J.G. do not currently reside together.  The record reflects that while N.B. was caring for J.B., J.B. has never been harmed.

[¶26] The juvenile court’s decision in this case is an impermissible speculation about future decisions and the potential impact of those decisions.  This Court has previously rejected a deprivation finding based on speculation regarding a parent’s future decisions.  
Interest of R.S.
, 2010 ND 147, ¶ 15, 787 N.W.2d 277.  In 
R.S.,
 at ¶ 2, a 17-year-old mother left her parent’s residence and moved in with an acquaintance.  Social services preferred that the mother and child continue to reside at her parent’s residence and initiated deprivation proceedings.  
Id.
 at ¶ 4.  The district court found the child to be deprived, but this Court reversed that decision and noted the following:

N.D.C.C. § 27-20-02(8)(a) does not provide a child is deprived based upon a future possibility of harm where the child has not actually lacked proper parental care or control.  As R.S.’s guardian ad litem correctly recognized, the evidentiary hearing focused upon A.D.S.’s decision-making rather than whether those decisions were presently depriving R.S. of proper parental care and control.

Id.
 at ¶ 16.

[¶27] The evidence is undisputed that N.B. is a good parent.  N.B. has physical care of J.B.  J.B. has not been harmed while in N.B.’s care.  From these facts, I am left with a definite and firm conviction a mistake has been made in determining J.B. to be a deprived child.

[¶28] I recognize this Court has previously determined that the failure of one parent to separate from the other parent justifies a finding that the child is deprived if one parent creates a dangerous environment for the child.  
See Interest of D.N.
, 2001 ND 71, ¶ 13, 624 N.W.2d 686; 
Interest of N.N.
, 278 N.W.2d 150, 154 (N.D. 1979); 
Interest of J.Z.
, 190 N.W.2d 27, 35 (N.D. 1971).  However, all of those cases involve actual harm to a child caused by one parent and then a decision by the other parent to continue the relationship with the offending parent.  These cases differ from the current case for several reasons.  First, J.G., the offending parent, is not currently residing with N.B.  Second, J.B. has not been harmed while J.B. has been in N.B.’s physical care.  Third, N.B. has expressed a willingness not to reside with J.G. if necessary.  Our prior cases involving a deprivation finding of a non-offending parent because of the actions of the other parent involved situations that presented significantly greater potential harm to the child than the circumstances of this case.

[¶29] I am left with a definite and firm conviction that this Court’s finding of J.B. to be a deprived child is a mistake.  The decision should be reversed and the shelter care order terminated.

[¶30] Jon J. Jensen