2004 ND 142

**In the Interest of T.J.L. (Previously R.), Child.**

**Nancy D. Yon, Assistant State's Attorney, Petitioner and Appellee,**

v.

**L.S. (Mother), B.L. (Father), Respondents and Appellants,**

**Grand Forks County Social Services (Custodian), Respondent.**

No. 20030291.

Supreme Court of North Dakota.

June 30, 2004.

Dale Richard Rivard (appeared), Assistant State's Attorney, and Carmell Berry

(argued), third-year law student, Grand Forks, N.D., for petitioner and appellee.

DeWayne Johnston (submitted on brief), Olson Johnston Law Office, Grand Forks, N.D., for respondents and appellants.

VANDE WALLE, Chief Justice.

[¶ 1] L.S. ("Linda," a pseudonym) and B.L. ("Bob," a pseudonym) appealed from a judgment terminating parental rights to their daughter, T.J.L. ("Tracy," a pseudonym). We conclude the district court's findings that there is clear and convincing evidence Tracy is deprived, the causes and conditions of the deprivation are likely to continue, and as a result of the continued deprivation, she will probably suffer serious physical, mental, or emotional harm if Linda's and Bob's parental rights are not terminated, are not clearly erroneous. We affirm.

I

[¶ 2] Under N.D.C.C. § 27–20–44(1)(b)(1), termination of parental rights requires satisfaction of a three-pronged test which the party petitioning for termination must prove by clear and convincing evidence: (1) the child is a deprived child; (2) the conditions and causes of the deprivation are likely to continue; and (3) by reason thereof, the child is suffering, or will probably suffer, serious physical, mental, moral, or emotional harm. *In re B.N.*, 2003 ND 68, ¶ 18, 660 N.W.2d 610. Effective March 1, 2004, N.D.R.Civ.P. 52(a) was amended to provide that findings of fact in juvenile matters shall not be set aside unless clearly erroneous. A finding of fact is clearly erroneous under N.D.R.Civ.P. 52(a) if there is no evidence to support it, if it is clear to the reviewing court that a mistake has been made, or if the finding is induced by an erroneous view of the law. *Akerlind v. Buck*, 2003 ND 169, ¶ 7, 671 N.W.2d 256. Unlike the situation in *Inter-*

*est of T.F.*, 2004 ND 126, ¶ 8, 681 N.W.2d 786, where a plurality of the Court applied the former de novo standard of review because the appellant elected to not request a review of a referee's decision by the district court in the belief that this Court would conduct a de novo review, this case was heard and decided by the district court judge in the first instance. Therefore, we apply N.D.R.Civ.P. 52(a) to our review of the district court's findings.

II

[¶ 3] Linda and Bob contend on appeal there is no clear and convincing evidence that the conditions and causes of Tracy's deprivation are likely to continue.

[¶ 4] In *In re D.R.*, 2001 ND 183, ¶ 11, 636 N.W.2d 412, we explained the evidence necessary to establish continuation of deprivation:

> Evidence of a parent's background, including previous incidents of abuse and deprivation, may be considered in determining whether deprivation is likely to continue. *In Interest of L.F.*, 1998 ND 129, ¶ 16, 580 N.W.2d 573. Evidence of past or present deprivation, however, is not alone sufficient to terminate parental rights, and there must be prognostic evidence that deprivation will continue or be unremedied. *Id.* This Court has defined prognostic evidence as evidence that forms the basis of reasonable predication as to future behavior. *In Interest of A.S.*, 1998 ND 181, ¶ 19, 584 N.W.2d 853.

[¶ 5] At the time of the termination proceedings, Linda was 31 years old and had been diagnosed with major depression, intermittent explosive disorder, obsessive compulsive disorder, and borderline personality. She functions in the low normal range verbally, but in the retarded range for performance tasks. Social Services workers have been involved with Linda

since 1993. Linda's parental rights to a son were involuntarily terminated in 1998. Although Linda's mental health has improved somewhat over the past several years, she continues to function in the moderately impaired range. Linda lives with Bob in Grand Forks. Bob was 25 years old and suffered a traumatic brain injury as a child. He has been diagnosed with mental retardation, seizure disorder, "static encephalopathy with left hemiparesis," and functions at the level of a four to five-year-old child. Bob also receives support services through Social Services. Linda and Bob have histories of violent behavior.

[¶ 6] Tracy was born in late 2000. Two months before the birth, Social Services received three child abuse and neglect reports about Linda and Bob. The reports included concerns about their ability to care for the new infant and the suitability of their home. Linda was unable to understand the need to keep appointments with her obstetrician/gynecologist. The home was unsanitary and Linda was known to bring rodents and animals to live there. Linda and Bob lacked interpersonal communication skills and did not use services that were available to them. Upon Tracy's birth, the child was placed directly from the hospital into foster care.

[¶ 7] Linda first visited the child on December 12, 2000, and Bob's first visitation occurred on December 27, 2000. One hour weekly supervised office visits continued until June 2001, when the visits were increased to twice a week until August 2001. Hourly in-home visits then began and were increased to two times per week in September 2001 and three times per week in January 2002. Bob and Linda's first overnight visit with the child occurred in January 2002. During this time, Linda and Bob were referred to the "Nurturing Program," which teaches parenting skills.

During sessions, the couple had difficulty caring for Tracy and did not know what to do when she would start to cry. Despite Tracy's diagnosis of upper respiratory condition, Linda and Bob smoked in her presence to Tracy's detriment. After a visit with her parents, it would take about two weeks for Tracy's respiratory problems to recover, and when weekly visitations began, her respiratory problems were constant.

[¶ 8] Tracy's foster mother testified about problems with Tracy after the visitations:

> [Tracy] would come back very agitated. She was congested, mucus nose, runny eyes. She had respiratory problems. Her clothes would be dirty, food would be in her hair. Her vagina area and bottom area were not clean. She was hungry. She was very aggressive. She would only at that point go to me when I would pick her up. She would not go to anyone else in the family but was very aggressive. She was hitting and pulling hair and very fearful.

[¶ 9] Unsupervised visitations ceased in February 2002 after Linda left Tracy alone with Bob, in violation of instructions from Social Services. Bob admitted he could not have Tracy alone in his custody because of his seizure disorder. At the time of the trial in July 2003, Tracy had been in foster care for 967 nights. *See* N.D.C.C. § 27–20–44(1)(b)(2) (court can terminate parental rights if child is deprived and has been in foster care "for at least four hundred fifty out of the previous six hundred sixty nights").

[¶ 10] The evidence establishes that Social Services attempted to work with Linda and Bob to improve their homemaking and parenting skills, but the couple avoided offered services and adopted an adversarial relationship with the service providers. Linda and Bob have shown

738

little or no ability to provide discipline for Tracy and their parenting abilities actually decreased the longer the couple spent with the child. A psychologist testified Linda and Bob did not have the capability to grow mentally along with Tracy. The district court found Tracy was "making good progress in foster care" and that "[i]t would be disastrous for [Tracy's] development to be in the custody of [Bob] and [Linda]."

[¶ 11] When there has been an extensive period in which efforts have been made to overcome a parent's inabilities to effectively parent, courts cannot allow the child to remain in an indeterminate status midway between foster care and the obvious need for permanent placement. *See In re D.N.,* 2001 ND 71, ¶ 14, 624 N.W.2d 686. Having carefully reviewed the record, we conclude the district court's findings that there is clear and convincing evidence Tracy is deprived, the causes and conditions of the deprivation are likely to continue, and as a result of the continued deprivation, she will probably suffer serious physical, mental, or emotional harm if Linda's and Bob's parental rights are not terminated, are not clearly erroneous.

### III

[¶ 12] The judgment is affirmed.

[¶ 13] GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM, WILLIAM A. NEUMANN, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.