696 N.W.2d 160 (2005)
2005 ND APP 3
In the Interest of A.K., a Child and M.B., a Child.
Carla Pine, Petitioner and Appellee
v.
A. and M., children; L.S., Mother; J.B., Father, A.K., Sr., Father; and guardian ad litem, Ed Dyer; and the Executive Director of Human Services Dept., State of North Dakota, Respondents.
L.S., Mother, Respondent and Appellant.
No. 20040313CA.
Court of Appeals of North Dakota.
May 10, 2005.
*161 Tyrone Jay Turner (on brief), Assistant State's Attorney, Bismarck, N.D., for petitioner and appellee.
William Delaney Schmidt (on brief), Bismarck, N.D., for respondent and appellant.
PER CURIAM.
[¶ 1] L.S. appealed a juvenile court order affirming a judicial referee's order terminating her parental rights in A.K. and M.B. We affirm.

I
[¶ 2] A.K., who was born on December 24, 2000, and M.K., who was born on December 13, 2002, were taken into shelter care on March 19, 2003, and again on April 9, 2003.
[¶ 3] After a hearing on August 31, 2004, the judicial referee found the following facts by clear and convincing evidence. An April 9, 2003, fire in L.S.'s apartment resulted in M.B. being severely burned and L.S. being charged with possession of drug paraphernalia, child abuse and neglect for using methamphetamine in the presence of the children. L.S. pleaded guilty to the charges and received a deferred imposition of sentence, which was later revoked and she was then sentenced to 18 months in jail for not maintaining suitable employment or contact with her probation officer, not completing chemical dependency or nurturing classes, not paying a victim witness fee, testing positive for cocaine, and possessing a weapon. L.S. started, but did not finish, an abuse group and a parenting class. She visited A.K. only once since June 2003 and visited M.B. three times since his release from the hospital on May 12, 2003. L.S. is at the Correctional Center in New England, with an earliest release date of February 21, 2005, and a latest release date of June 2005. She has not attended any permanency plan meetings. Her request for time after release from incarceration to complete requirements imposed to regain custody "flies in the face of the best interests of the children and their need for permanency." "There is testimony that the foster parents in Minnesota are looking into adoption of both the children." Both children have been out of the parental home for at least 450 out of the prior 660 nights. "[B]oth children are deprived and the conditions and causes of the deprivation are likely to continue or will not be remedied, and [ ] by reason thereof, the children are suffering or will probably suffer, serious physical, mental, moral, or emotional harm." "It is in the best interests of both children that the parental rights of [L.S.] ... be terminated."
[¶ 4] The referee's order terminating L.S.'s parental rights in the children was affirmed on review by the juvenile court. On appeal, L.S. contends the court erred in finding by clear and convincing evidence that the children are deprived, the conditions and causes of the deprivation are likely to continue or not be remedied, and *162 the children are suffering or will probably suffer serious physical, mental, moral or emotional harm justifying termination of L.S.'s parental rights.

II
[¶ 5] Section 27-20-44(1), N.D.C.C., provides for termination of parental rights:
The court by order may terminate the parental rights of a parent with respect to the parent's child if:
a. The parent has abandoned the child;
b. The child is a deprived child and the court finds:
(1) The conditions and causes of the deprivation are likely to continue or will not be remedied and that by reason thereof the child is suffering or will probably suffer serious physical, mental, moral, or emotional harm;
(2) The child has been in foster care, in the care, custody, and control of the department, or a county social service board, or, in cases arising out of an adjudication by the juvenile court that a child is an unruly child, the division of juvenile services, for at least four hundred fifty out of the previous six hundred sixty nights.
[¶ 6] Under N.D.C.C. § 27-20-02(8)(a), a deprived child is a child who "[i]s without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health, or morals, and the deprivation is not due primarily to the lack of financial means of the child's parents, guardian, or other custodian." At the hearing, L.S.'s attorney conceded the children were deprived and L.S. "currently is not capable of providing for the children because she's incarcerated."
[¶ 7] The State must prove the elements for termination of parental rights by clear and convincing evidence. In re R.O., 2001 ND 137, ¶ 10, 631 N.W.2d 159. Effective March 1, 2004, N.D.R.Civ.P. 52(a) was amended to provide that findings of fact in juvenile matters shall not be set aside on appeal unless clearly erroneous. In re Adoption of S.R.F., 2004 ND 150, ¶ 7, 683 N.W.2d 913. On appeal, the complaining party has the burden of showing that findings of fact are clearly erroneous. Striefel v. Striefel, 2004 ND 210, ¶ 8, 689 N.W.2d 415. A trial court's findings of fact are presumptively correct, and on appeal we view the evidence in the light most favorable to the findings, without reweighing the evidence or reassessing credibility if there is evidence supporting the findings. Id. "A finding of fact is clearly erroneous under N.D.R.Civ.P. 52(a) if there is no evidence to support it, if it is clear to the reviewing court that a mistake has been made, or if the finding is induced by an erroneous view of the law." In re T.J.L., 2004 ND 142, ¶ 2, 682 N.W.2d 735.
[¶ 8] In determining if the causes and conditions of deprivation will continue or will not be remedied, there must be prognostic evidence forming the basis for reasonable prediction of continued or future deprivation. In re E.R., 2004 ND 202, ¶ 7, 688 N.W.2d 384; In re D.Q., 2002 ND 188, ¶ 21, 653 N.W.2d 713. Any prediction of the future requires some reflection upon the past conduct of the parties. In re T.F., 2004 ND 126, ¶ 19, 681 N.W.2d 786; In re D.Q., at ¶ 21. A lack of parental cooperation with social service agencies is pertinent to determining if deprivation will continue. In re T.F., at ¶ 19; In re B.N., 2003 ND 68, ¶ 23, 660 N.W.2d 610; In re D.Q., at ¶ 21. "Evidence of a parent's background, including previous incidents of abuse and deprivation, may be *163 considered in determining whether deprivation is likely to continue." In re T.F., at ¶ 12. "[T]he primary purpose of N.D.C.C. ch. 27-20 is to protect the welfare of children." In re A.M., 1999 ND 195, ¶ 6, 601 N.W.2d 253. A court need not await a tragic event before terminating parental rights. In re D.Q., at ¶ 21. "When a parent, through voluntary actions, without reasonable justification, makes herself unavailable to care for and parent a young child, the child should not be expected to wait or assume the risk involved in waiting for permanency and stability in her life." In re E.R., at ¶ 9.
[¶ 9] As in In re B.N., 2003 ND 68, ¶ 21, 660 N.W.2d 610, L.S. did not provide a safe, healthy environment for her children when they were living with her. L.S. pleaded guilty to a drug charge, child abuse and child neglect. L.S. violated conditions of her probation, resulting in her incarceration and inability "to provide for the children's care for a considerable time." In re T.F., 2004 ND 126, ¶ 11, 681 N.W.2d 786. That conduct also demonstrated "a serious indifference toward [her] responsibilities and obligations as a parent." In re C.R., 1999 ND 221, ¶ 10, 602 N.W.2d 520. L.S. did not complete chemical dependency, nurturing, and parenting classes, and she did not participate in any permanency plan meetings. We conclude L.S. "has failed to overcome the presumption of correctness we accord to the trial court's findings of fact," and the findings are not clearly erroneous. Oldham v. Oldham, 2004 ND 62, ¶ 13, 677 N.W.2d 196.

III
[¶ 10] Affirmed.
[¶ 11] EVERETT NELS OLSON, S.J., BRUCE E. BOHLMAN, S.J., and WILLIAM F. HODNY, S.J., concur.