1999 ND 106

**In the Interest of R.K.E.**

**Gloria J. Maragos, Petitioner
and Appellee,**

v.

**R.K.E., a minor child, B.E., mother,
Respondents and Appellants,**

and

**R.E., father Respondent.**

No. 980357.

Supreme Court of North Dakota.

June 18, 1999.

Timothy C. Wilhelm, Assistant State's Attorney, Minot, for petitioner and appellee.

Debra K. Edwardson, Edwardson Law Office, Minot, for respondents and appellants.

NEUMANN, Justice.

[¶ 1] R.K.E., a minor child, appeals from the juvenile court's order extending his custody with the Division of Juvenile Services for a period not to exceed twelve months. We affirm.

I

[¶ 2] On April 18, 1997, a judicial referee found, by clear and convincing evidence, R.K.E. was within the provisions of N.D.C.C. ch. 27–20, the Uniform Juvenile Court Act, and was in need of treatment and rehabilitation as a delinquent and unruly child. The referee found it was in the best interest of R.K.E. and the public for R.K.E. to receive treatment or rehabilitation. The referee recommended R.K.E. be placed in the care, custody, and control of juvenile services for a period not to exceed eighteen months. On April 25, 1997, the juvenile court reviewed and confirmed the referee's findings and recommendations.

[¶ 3] On September 22, 1998, at the request of juvenile services, the judicial referee issued a notice of review hearing to extend the original court order not to exceed twelve months. On October 13, 1998, the juvenile court issued its findings and order. The court found R.K.E. to be in need of continued treatment and rehabilitation, and found it was in the best interests of the child to remain in the custody, care, and control of juvenile services for a period of time not to exceed twelve months. R.K.E. appeals.

II

[¶ 4] When a party appeals an order from juvenile court issued under the Uniform Juvenile Court Act, ch. 27–20, N.D.C.C., we review "the files, records, and minutes or transcript of the evidence" and give "appreciable weight to the findings" of the juvenile court. N.D.C.C. § 27–20–56(1); *Eastburn v. B.E.*, 545 N.W.2d 767, 770 (N.D.1996). Our review is not limited to a determination of whether the findings are clearly erroneous. *Eastburn*, 545 N.W.2d at 770. Rather, we are allowed to reexamine the evidence similar to the former procedure of trial de novo. *Id.* We do, however, give some deference to the juvenile court's decision because the court had the opportunity to observe the candor and demeanor of the witnesses. *Id.*

[¶ 5] The juvenile court may extend disposition orders of delinquent and unruly children under N.D.C.C. § 27–20–36(2), which provides:

2. An order of disposition committing a delinquent or unruly child to the division of juvenile services continues in force for two years, excluding any period of time the child is on parole from an institution, or until the child is sooner discharged by an institution. The court which made the order may extend its duration for additional two-year periods subject to like discharge, if:

a. A hearing is held upon motion of the division, or on the court's own motion, prior to the expiration of the order;

b. Reasonable notice of the hearing and an opportunity to be heard are given to the child and the parent, guardian, or other custodian; and

c. The court finds that the extension is necessary for the treatment or rehabilitation of the child.

[¶ 6] R.K.E. argues the State failed to meet its burden of proving continued custody by juvenile services is necessary for his treatment and rehabilitation under subdivision (c). We disagree.

[¶ 7] The State must prove by clear and convincing evidence that the treatment and rehabilitation of a delinquent and unruly child requires the extension of the order for disposition. *See In the Interest of N.W.,* 510 N.W.2d 580, 582 (N.D.1994) (holding there was clear and convincing evidence to support the extension of temporary foster care under the court's original order).

[¶ 8] The hearing to extend the custody of juvenile services was held on October 9, 1998. The transcript of the extension hearing reflects R.K.E. was originally placed in a residential facility outside the home on July 23, 1997. R.K.E. was moved from the residential facility on September 12, 1997, because of his aggressive behaviors and refusal to attend school. R.K.E. was placed in the time-out program at the Youth Correctional Center (YCC) until September 24, 1997. On completion of the time-out program, R.K.E. refused placement back at the residential facility, choosing instead to remain at the YCC.

[¶ 9] The transcript reflects that on November 19, 1997, R.K.E. committed a simple assault while at the YCC. R.K.E. received an informal adjustment from the juvenile court for his conduct. Following that incident, R.K.E. was placed in the Special Management Program in Pine Cottage, the most secure cottage at the YCC. R.K.E. progressed in the program and was released from Pine Cottage on January 23, 1998, and returned to the less restrictive cottage where he had initially been placed. Shortly after returning to the less restrictive cottage, R.K.E. began reverting to aggressive behaviors and was again placed in Pine Cottage.

[¶ 10] In an effort to get R.K.E. to succeed in a less restrictive environment, he was placed in Southwest Keys, a residential treatment center, on February 23, 1998. R.K.E. was discharged from Southwest Keys on March 9, 1998, for displaying severe aggressive behavior, having difficulty following the program rules, and making explicit sexual threats toward female staff. R.K.E. was then placed back in Pine Cottage.

[¶ 11] The transcript testimony and exhibits received detail R.K.E.'s behavior at the YCC following his March 9, 1998, return to the facility. A quarterly report was submitted indicating incidents occurred from March through June 1998, showing R.K.E. continued to exert aggressive behaviors. At one time, R.K.E. was placed on suicide warning status for talk of hurting himself.

[¶ 12] The next quarterly report from June to September 1998, indicates R.K.E. continued to have problems controlling his aggressive behaviors. The report describes two incidents; one in June and the other at the end of July. The first incident involved R.K.E. carving markings on his body with a piece of metal and physically and verbally acting out which led to aggressive behaviors toward a staff member. The other incident involved R.K.E. giving his medication to another resident so that resident could inject it.

[¶ 13] The testimony also reflects R.K.E. had started to demonstrate improvement in his attitude and behavior during the two months preceding the extension hearing. During testimony, the case manager for juvenile services cautioned that an abrupt or early return to his mother would simply set R.K.E. up for failure, and recommended the best transition for achieving a successful release would be a gradual stepdown process through less restrictive environments until R.K.E. could ease back into life with his mother.

[¶ 14] The juvenile court issued written findings of fact and an oral ruling from the

bench at the close of the hearing. The district court ruled:

> The court finds by clear and convincing evidence that it is in the best interests of the child and that the child requires an extension of the original court order up to twelve months, subject of course to the normal provisions that the Division of Juvenile Services is obligated to use its best interests or use its best efforts to reunite the parent and child.
>
> * * * *
>
> I join Mr. Wilhelm however in complimenting the child in this case who has overcome some of the situations that are in his life be they some disabilities, be they some need of medication, whatever they may be. Some of them might be severe problems but it does appear that he is going to make it and I prefer to think that it's because he's trying, although I will also recognize that it is in significant measure because of the actions of the Division of Juvenile Services. They placed a child in a situation where he can make it and to him should go the credit, but the environment setting it up is one that I'm going to continue for a while so that he doesn't get set up for failure—that's the underlying reason.

In its written findings, the district court found:

> That after reviewing the file, hearing the testimony, and pursuant to statute, the Court finds that [R.K.E.] is in continued need of treatment and rehabilitation, and it is in his best interest to remain under the care, custody, and control of the Division of Juvenile Services for a period of time not to exceed twelve (12) months, or October 9, 1999.

[¶ 15] From our review of the testimony and evidence, it is clear the juvenile court's written and oral findings are correct. There is clear and convincing evidence R.K.E. is in need of continued treatment and rehabilitation. The record clearly indicates a pattern of conduct in which R.K.E. had success in restrictive environments, and upon placement in less restrictive environments reverted to difficulty controlling his behavior. In light of the recent commendable improvements shown by R.K.E., we believe it is clear R.K.E. needs to be gradually introduced into less restrictive environments before being placed back with his mother. It is clear from the court's own statements that it properly considered all the relevant evidence in making its determination. Therefore, we affirm the juvenile court's decision.

[¶ 16] Although not properly raised, we will briefly respond to R.K.E.'s other issues explaining why we decline to substantively review them.

[¶ 17] R.K.E. argues the school district violated his rights under state and federal law as a child with disabilities. In response to these arguments made at the extension hearing the juvenile court orally ruled:

> The primary law referred to by the respondent's counsel, the cases and the other materials that were attachments to the Brief relate to actions between a child or a parent and the child [and] a school district. I note that the school district is not a party to this action, is not represented and from my reading of the history of the case, need not be and should not have been.

We agree with the juvenile court's statements. Due process requires that a necessary person be a party to the action. *See* N.D.R.Civ.P. 19. Furthermore, under N.D.C.C. §§ 27–20–03 and 27–20–04, a juvenile court has limited exclusive original jurisdiction; an action against the school district for state or federal law violations does not fall within the jurisdiction of the juvenile court. Because these issues were not properly before the juvenile court, neither are they properly before this Court in this appeal, and we decline to review them.

[¶ 18] Without explicitly stating, R.K.E. attempts to attack the validity of

his original adjudication and disposition as a delinquent and unruly child. Section 27–20–56(1), N.D.C.C., and the basic procedural principle of finality preclude such an attack.

[¶ 19] The April 25, 1997, order confirming the judicial referee's findings and recommendations was a final order from which no appeal was taken. Under N.D.C.C. § 27–20–56(1), a party may appeal a final order, judgment, or decree of the juvenile court within thirty days or within further time as granted by this Court. An appeal was not taken from the order within thirty days, and a request was not made for an extension of time under N.D.C.C. § 27–20–56(1). Because the original order finding R.K.E. delinquent and unruly and ordering disposition was not appealed, we decline to address issues which would have us redetermine that final, unappealed decision.[1]

### III

[¶ 20] We affirm the juvenile court's order extending the custody, care, and control of juvenile services over R.K.E. for up to but not exceeding twelve months.

[¶ 21] VANDE WALLE, C.J., and MARING, KAPSNER and SANDSTROM, JJ., concur.

---

1. Two issues argued by R.K.E. concern the alleged discriminatory practice of treating a juvenile with disabilities different than other children, and the inappropriate care of R.K.E., a child with disabilities, while in custody with juvenile services. Both issues are merely attempting to recast the issue of whether R.K.E. was properly found to be delinquent and unruly, and whether proper and effective disposition by the court was originally ordered.