746 N.W.2d 411 (2008)
2008 ND 51
In the Interest of B.B., a child
Carmell F. Mattison, Grand Forks County Assistant State's Attorney, Petitioner and Appellee,
v.
B.B. (child), B.J.F. (mother), Respondents and
S.L.B. (father), Respondent and Appellant.
No. 20070233.
Supreme Court of North Dakota.
March 20, 2008.
*412 Deborah L. Garner (on brief), Assistant State's Attorney, Stephanie Weis (on brief), 3rd year law student, and Jacqueline A. Gaddie (argued), Assistant State's Attorney, Grand Forks, for petitioner and appellee.
Rebecca J. Heigaard McGurran, Grand Forks Public Defender Office, Grand Forks, ND, for respondent and appellant.
VANDE WALLE, Chief Justice.
[¶ 1] S.L.B. appealed from a juvenile court order extending placement of his son, B.B., by Grand Forks County Social Services ("Social Services") for a period of twelve months. We affirm.

*413 I.
[¶ 2] Nine-year-old B.B. was in foster care from September 2004 to September 2005. He lived with his father, S.L.B., until he was again placed in foster care in June 2006 after a juvenile court found B.B. was deprived. In July 2006, Social Services made the following recommendations for S.L.B. to complete within twelve months: (1) maintain contact with B.B., (2) maintain contact with Social Services, (3) complete an alcohol and drug evaluation, (4) obtain parenting and psychological assessments, (5) maintain a stable home, (6) complete random urinalysis testing, and (7) complete a domestic violence offender treatment program.
[¶ 3] In March 2007, B.B. was placed with an aunt and uncle in Washington. S.L.B. maintained regular contact with B.B. and Social Services. He passed random urinalyses and there were no new domestic violence allegations. S.L.B. completed a sex offender evaluation in May 2007 and a domestic violence offender treatment program in June 2007. Social Services petitioned for extension of placement of B.B. as a deprived child in June 2007. The juvenile court found B.B. was a deprived child, that deprivation would likely continue and ordered extended placement by Social Services for twelve months.

II.
[¶ 4] S.L.B. argues the juvenile court erred in finding B.B. continued to be a deprived child. Findings of fact by a juvenile court are not overturned unless clearly erroneous. N.D.R.Civ.P. 52(a). "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support the finding, or if, on the entire record, we are left with a definite and firm conviction a mistake has been made." Interest of T.A., 2006 ND 210, ¶ 11, 722 N.W.2d 548 (citation omitted). Under N.D.R.Civ.P. 52(a), "due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." When a party appeals a juvenile court order issued under the Uniform Juvenile Court Act, found at N.D.C.C. ch. 27-20, we review "the files, records, and minutes or transcript of the evidence" and we give "appreciable weight to the findings" of the court. N.D.C.C. § 27-20-56(1).
[¶ 5] A juvenile court may extend a disposition order if:
a. A hearing is held before the expiration of the order upon motion of a party or on the court's own motion;
b. Reasonable notice of the hearing and opportunity to be heard are given to the parties affected;
c. The court finds the extension is necessary to accomplish the purposes of the order extended; and
d. The extension does not exceed twelve months from the expiration of an order limited by subsection 3 or two years from the expiration of any other limited order.
N.D.C.C. § 27-20-36(4). In addition, before extending a disposition order, the juvenile court must find that the child remains "deprived" as defined by N.D.C.C. § 27-20-02(8), because the court would lack jurisdiction over the child under N.D.C.C. § 27-20-03(1)(a) without such a finding. Eastburn v. B.E., 545 N.W.2d 767, 770 (N.D.1996).
[¶ 6] A deprived child is one "without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health, or morals, and the deprivation is not due primarily to the lack of financial means of the child's parents, guardian, or other custodian." N.D.C.C. § 27-20-02(8)(a). *414 Clear and convincing evidence must support a finding of deprivation. Eastburn, at 770.
[¶ 7] S.L.B. argues the juvenile court had insufficient evidence to find continued domestic violence, chemical abuse problems and a failure to follow through with treatment and counseling. S.L.B. has passed numerous urinalyses and there has been no evidence of domestic violence since the original deprivation order was issued. The State also concedes the chemical abuse problems in the order were in reference to B.B.'s mother, not S.L.B. Therefore, the only remaining issue is whether S.L.B. has failed to follow through with treatment and counseling.
[¶ 8] Social worker Ann Tollefsrud testified that it was S.L.B.'s third completion of a domestic violence offender treatment program, showing S.L.B. had difficulty implementing the program's lessons in his life. Tollefsrud testified it was S.L.B.'s delay in completing the treatment program which resulted in Social Services' inability to determine whether he was following the recommendations for change, because only a short time had passed since S.L.B.'s completion of the treatment program. S.L.B. offered no explanation for why he waited so long to complete the treatment program.
[¶ 9] This Court has concluded a pattern of parental conduct can form a basis for a reasonable prediction of future behavior. Interest of A.L., 2001 ND 59, ¶ 16, 623 N.W.2d 418 (refusing to change behavior after ten years of social services can establish pattern of parental conduct). Further, "[e]vidence of the parent's background, including previous incidents of abuse and deprivation, may be considered in determining whether deprivation is likely to continue." Interest of L.F., 1998 ND 129, ¶ 16, 580 N.W.2d 573. S.L.B. did complete the treatment program prior to the expiration of the order for temporary placement of B.B. However, completing treatment is not an end in and of itself. Rather, S.L.B. must show he can implement the treatment program's lessons appropriately. Due in large part to S.L.B.'s delay in completing the program, this had not been demonstrated at the time the order for extension of placement was issued.
[¶ 10] Tollefsrud also testified Social Services did not receive S.L.B.'s sex offender evaluation report until June 2007 because he waited until May 2007 to undergo the evaluation. Again, S.L.B. offered no explanation for his delay in undergoing the evaluation.
[¶ 11] The results of the sex offender evaluation indicated numerous symptoms of depression as well as issues with reality testing, organization of thought, manipulation and delusional beliefs. S.L.B. stated during the interview he believed his hands had "healing energy" and that he had healed adults and children. Testing indicated the presence of Paranoid Schizophrenia or Schizoaffective disorder and indicated that S.L.B. tends to react to stressful situations with physical or verbal aggression. The evaluator noted that S.L.B. "tends to interact with others in a manipulative and self-centered fashion." Among the recommendations made by the evaluator were psychiatric and therapy intervention, although the evaluator noted that testing indicated a poor probability of S.L.B. responding to therapy.
[¶ 12] According to the sex offender evaluation, there are several unaddressed mental health issues which would likely have a harmful impact on B.B. if he were returned to S.L.B.'s home, including S.L.B.'s manipulative tendencies, delusional beliefs and possible Paranoid Schizophrenia or Schizoaffective disorder. At *415 the time of the hearing, S.L.B. had a VA appointment scheduled to address his possible mental illness, but had not met with any physician. Because S.L.B.'s mental health issues had not been addressed, the juvenile court was not clearly erroneous in finding S.L.B. failed to follow through with appropriate rehabilitative treatment and counseling regimes.
[¶ 13] After reviewing the evidence, we conclude the juvenile court finding that B.B. is a deprived child with deprivation likely to continue is not clearly erroneous.

III.
[¶ 14] S.L.B. argues the juvenile court was clearly erroneous in finding reasonable efforts have been expended to prevent B.B. from being permanently removed from the parental home. Reasonable efforts to preserve and reunite families must be made before "the placement of a child in foster care, to prevent or eliminate the need for removing the child from the child's home[,] and [t]o make it possible for a child to return safely to the child's home." N.D.C.C. § 27-20-32.2(2). Under N.D.C.C. § 27-20-32.2(1), "reasonable efforts" is defined as:
[T]he exercise of due diligence, by the agency granted authority over the child . . . to use appropriate and available services to meet the needs of the child and the child's family in order to prevent removal of the child from the child's family or, after removal, to use appropriate and available services to eliminate the need for removal and to reunite the child and the child's family. In determining reasonable efforts to be made with respect to a child . . . and in making reasonable efforts, the child's health and safety must be the paramount concern.
[¶ 15] "Assisting a parent to establish an adequate environment for the child by offering long term and intensive treatment is not mandated if it cannot be successfully undertaken in a time frame that would enable the child to return to the parental home without causing severe dislocation from emotional attachments formed during long-term foster care." Interest of E.R., 2004 ND 202, ¶ 11, 688 N.W.2d 384.
[¶ 16] Prior to petitioning for the twelve-month extension of placement of B.B., Social Services provided the following services: Foster Care Case Management, regular Children and Family Team meetings, psychological and psychiatric services, alcohol and drug services, family and individual therapy, Wishing Well services, Interstate Compact services, probation services, a domestic violence offender treatment program and services through Community Violence Intervention Center. The juvenile court's finding that reasonable efforts were made is not clearly erroneous.
[¶ 17] We affirm.
[¶ 18] DALE V. SANDSTROM, DANIEL J. CROTHERS, and MARY MUEHLEN MARING, JJ., concur.
KAPSNER, Justice, dissenting.
[¶ 19] I respectfully dissent.
[¶ 20] If the standard to be applied was the best interests of the child, then surely this order should be affirmed. The evidence established B.B.'s situation has improved in the care of his aunt and uncle in Washington.
[¶ 21] But the evidentiary standard is to show by clear and convincing evidence that the deprivation of B.B. is likely to continue in order to support the extension of the order. N.D.C.C. §§ 27-20-29, 27-20-36. The evidence does not meet the standard. As noted by the majority in ¶ 2, *416 S.L.B. was given several tasks to complete preparatory to re-uniting with his son. He has completed those tasks within the time frame given to him.
[¶ 22] The evidence submitted by the social worker providing case management services establishes S.L.B. has participated in numerous parenting/psychological assessments. "[I]n testing specific to parenting, there were few problems indicating the difficulties with parenting seem due to his chemical abuse and personality problems instead of physical violence towards children or unusual attitudes toward parenting." The negative urinalysis results indicate a change in his past chemical abuse. He has completed every evaluation he was asked to undertake. Despite the evidence that chemical addiction was being addressed, there were no new episodes of domestic violence, and the evaluations and other tasks were completed, the juvenile court based the extension of the order on a "determin[ation] that the conduct constituting the deprivation (repeated domestic violence, substance abuse issues and failure to follow through with appropriate rehabilitative treatment/counseling regimens . . .)" was not the result of indigency and "would probably continue."
[¶ 23] Despite this successful compliance with a series of tasks supposedly designed to address S.L.B.'s deficiencies as a parent, the decision is now affirmed based upon "a pattern of parental conduct," looking to conduct before B.B. was placed in foster care, and a lack of showing that S.L.B. "can implement" what he has learned in the completion of those tasks.
[¶ 24] I concur in the holding that the trial court did not err in finding reasonable efforts were made to preserve the family. S.L.B. has participated in those reasonable efforts, but his participation is being given no weight.
[¶ 25] If looking to past conduct, while ignoring the steps taken to address the problems, is sufficient, then we have eliminated the evidentiary burden that the likelihood of continuing deprivation be established by clear and convincing evidence, and substituted a review that is looking at the best interests of the child. That is not what N.D.C.C. ch. 27-20 requires. Under the evidentiary burden imposed, the juvenile court's findings are clearly erroneous and I would reverse the extension order.
[¶ 26] Carol Ronning Kapsner