777 N.W.2d 350 (2010)
2010 ND 9
Interest of B.B., a child.
Haley L. Wamstad, Grand Forks County Assistant State's Attorney, Petitioner and Appellee
v.
B.B. (child), Respondent and
B.J.F. (mother) and S.L.B. (father), Respondents and Appellants.
No. 20090118.
Supreme Court of North Dakota.
January 12, 2010.
*353 Haley L. Wamstad (argued), Assistant State's Attorney, Grand Forks, N.D., for petitioner and appellee.
DeWayne Johnston (appeared) and Jacey Johnston (argued), Grand Forks, N.D., for respondent and appellant S.L.B.
MARING, Justice.
[¶ 1] S.L.B. and B.J.F., parents of B.B., separately appealed a juvenile court order extending placement of B.B. in the custody and control of the Director of Grand Forks County Social Services for a period of twelve months. B.J.F. failed to submit an appellate brief. Under N.D.R.App.P. 31(c), "[i]f an appellant fails to file a brief within the time provided by this rule or within a time extended by the court, the court on its own motion may dismiss the appeal." Because B.J.F. failed to submit a brief, she abandoned her claims, and we dismiss her appeal. See Johnson v. Schlotman, 502 N.W.2d 831, 836 (N.D.1993). Regarding S.L.B.'s appeal, we affirm the juvenile court's order of April 2, 2009.

I
[¶ 2] In September 2004, B.B. was removed from his home and placed in foster care after the juvenile court concluded B.B. was deprived. In September 2005, B.B. returned to live with his father, S.L.B. The State again filed a petition alleging that B.B. was deprived, and in June 2006, the juvenile court ordered B.B. in to foster care. Social Services recommended S.L.B. complete programming with the goal to return B.B. to one of his parents. S.L.B. appealed the 2006 juvenile court order finding B.B. was deprived and placing him in the custody of Social Services. Our Court affirmed the order. Interest of B.B., 2007 ND 115, ¶ 1, 735 N.W.2d 855. In July 2006, Social Services recommended S.L.B.: (1) maintain contact with B.B., (2) maintain contact with Social Services, (3) complete an alcohol and drug evaluation, (4) obtain parenting and psychological assessments, (5) complete a sex offender evaluation, (6) complete random urinalysis testing, and (7) complete a domestic violence offender treatment program. Social Services also requested that S.L.B. follow any recommendations following services. In March 2007, Social Services placed B.B. with a paternal aunt and uncle in Washington. In June 2007, the State petitioned for an extension of placement of B.B. for twelve months. The juvenile court concluded that B.B.'s deprivation continued, and it extended B.B.'s placement for twelve months. S.L.B. appealed that August 2007 order to this Court, and we affirmed. Interest of B.B., 2008 ND 51, ¶ 1, 746 N.W.2d 411.
*354 [¶ 3] The State petitioned for a permanency hearing in June 2008, alleging continuing deprivation and requesting an extension of the prior deprivation order. In the petition, the State alleged B.B., then ten-years-old, continued to be deprived because S.L.B. had not completed all of his assigned tasks, had not addressed his mental health problems in a consistent manner, had demonstrated problems with anger, and had maintained contact with the mother, B.J.F., despite contrary recommendations. The juvenile court held a hearing and ultimately found that the deprivation continued and ordered that B.B. continue to remain in the care, custody, and control of Social Services until July 6, 2009. S.L.B. appealed the April 2, 2009, juvenile court order.
[¶ 4] On appeal, S.L.B. argues the juvenile court (1) erred in finding B.B. continues to be deprived, (2) erred in finding reasonable efforts have been made for reunification, (3) failed to appoint independent legal counsel for B.B., and (4) failed to grant his motion for a visit and to return the child to North Dakota.

II
[¶ 5] S.L.B. argues the juvenile court erred in finding B.B. continued to be a deprived child. This Court will not overturn a juvenile court unless the findings of fact are clearly erroneous. N.D.R.Civ.P. 52(a). "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support the finding, or if, on the entire record, we are left with a definite and firm conviction a mistake has been made." Interest of B.B., 2008 ND 51, ¶ 4, 746 N.W.2d 411. On appeal, we review the files, records, and minutes or the transcript of the evidence, and we give "appreciable weight to the findings of the juvenile court." N.D.C.C. § 27-20-56(1). This Court gives the juvenile court due regard because the juvenile court has the opportunity to assess the credibility of the witnesses. N.D.R.Civ.P. 52(a); Interest of T.T., 2004 ND 138, ¶ 5, 681 N.W.2d 779.
[¶ 6] Under N.D.C.C. § 27-20-02(8)(a), a child is deprived when he or she is "without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health, or morals, and the deprivation is not due primarily to the lack of financial means of the child's parents, guardian, or other custodian." "Clear and convincing evidence must support a finding of deprivation." Interest of B.B., 2008 ND 51, ¶ 6, 746 N.W.2d 411. If the court determines a child is deprived, it may make an order of disposition best suited to the protection and physical, mental, and moral welfare of the child:
a. Permit the child to reside with the child's parents, guardian, or other custodian, subject to conditions and limitations as the court prescribes, including supervision as directed by the court for the protection of the child.
b. Subject to conditions and limitations as the court prescribes, transfer temporary legal custody to any of the following:
(1) An agency or other private organization licensed or otherwise authorized by law to receive and provide care for the child.
(2) The director of the county social service board or other public agency authorized by law to receive and provide care for the child.
. . . .
d. Require the parents, guardian, or other custodian to participate in treatment.

*355 e. Appoint a fit and willing relative or other appropriate individual as the child's legal guardian.
f. In cases in which a compelling reason has been shown that it would not be in the child's best interests to return home, to have parental rights terminated, to be placed for adoption, to be placed with a fit and willing relative, or to be placed with a legal guardian, establish, by order, some other planned permanent living arrangement.
N.D.C.C. § 27-20-30(1). A juvenile court may extend a disposition order if:
a. A hearing is held before the expiration of the order upon motion of a party or on the court's own motion;
b. Reasonable notice of the hearing and opportunity to be heard are given to the parties affected;
c. The court finds the extension is necessary to accomplish the purposes of the order extended; and
d. The extension does not exceed twelve months from the expiration of an order limited by subsection 3 or two years from the expiration of any other limited order.
N.D.C.C. § 27-20-36(4). The juvenile court must also find the child remains deprived, because the court would lack jurisdiction without that finding under N.D.C.C. § 27-20-03(1)(a). Interest of B.B., 2008 ND 51, ¶ 5, 746 N.W.2d 411 (citing Eastburn v. B.E., 545 N.W.2d 767, 770 (N.D.1996)).
[¶ 7] "[A] pattern of parental conduct can form a basis for a reasonable prediction of future behavior." Interest of B.B., 2008 ND 51, ¶ 9, 746 N.W.2d 411. "[E]vidence of the parent's background, including previous incidents of abuse and deprivation, may be considered in determining whether deprivation is likely to continue." Id. Additionally, parental cooperation, or a lack thereof, is pertinent to determining if deprivation will continue. See Interest of N.W., 510 N.W.2d 580, 582 (N.D.1994) (noting the juvenile court was bothered by the history of antagonism and lack of cooperation between social service employees and the parents in a deprivation case).
[¶ 8] The juvenile court found that the State had established by clear and convincing evidence that B.B. continued to be a deprived child. Specifically, the juvenile court found:
2. Respondent S.L.B. continues to have unresolved issues with anger management and substance abuse which have existed since at least July 2006. ... The failure to successfully complete these assigned tasks is attributable to both parties' lack of effort as well as an attitude that not all of the tasks are necessary. Neither Respondent appears willing to acknowledge that their issues and failure to complete these tasks adversely affects their ability to parent. Both parents have also indicated an unwillingness to make necessary life changes and complete requisite services to ensure the safety and well-being of any children in their custody and care.
[¶ 9] S.L.B. argues clear and convincing evidence does not exist to support a finding that: (1) there are domestic violence problems, (2) S.L.B. has chemical dependency issues, (3) S.L.B. has mental health problems, and (4) S.L.B. failed to cooperate and provide releases of information to Social Services. S.L.B. also contends that Social Services frustrates S.L.B.'s efforts by continually adding new tasks and failing to evaluate tasks.

A
[¶ 10] S.L.B. argues that the original 2006 petition was based on psychological *356 maltreatment due to domestic violence conflicts between B.B.'s parents, and clear and convincing evidence does not exist to support the State's contention that B.B. will endure further maltreatment due to domestic violence.
[¶ 11] The original 2006 petition alleged that B.B. and his half-siblings, in addition to allegations of domestic violence, had also been deprived due to inappropriate behavior including allegations that S.L.B. berated and swore at the children, made sexual comments and advances toward one of the children, and tested positive for drugs. In 2006, the juvenile court found that both parents' conduct contributed to the children's deprivation, which included repeated domestic violence, substance abuse, and failure to follow through with appropriate rehabilitative treatment and counseling regimens. In 2007, S.L.B. completed a domestic violence offender treatment program for the third time. However, it was shortly before the hearing on the petition. The juvenile court therefore extended the order partially to provide time to determine whether S.L.B. was following the recommendations made by the treatment program. See Interest of B.B., 2008 ND 51, ¶¶ 8-9, 746 N.W.2d 411. In the 2009 order, the juvenile court found that domestic violence had not occurred involving S.L.B. and B.J.F. since 2007. The court noted that S.L.B. had completed a domestic violence treatment offender program in 2007 and there were no new allegations of domestic violence. Therefore, we disagree with S.L.B.'s contention that the court found that domestic violence contributed to B.B.'s current deprivation.

B
[¶ 12] S.L.B. argues that clear and convincing evidence does not exist to support the juvenile court's finding that S.L.B. continues to have unresolved problems with substance abuse. According to S.L.B., the State did not call any expert witnesses to testify that S.L.B. is chemically dependent.
[¶ 13] In Interest of J.S.L., we concluded testimony by lay witnesses regarding chemical dependency and mental illness provided sufficient prognostic evidence about chemical dependency and mental illness. 2009 ND 43, ¶ 16, 763 N.W.2d 783. The record in this case contains lay witness testimony that substance abuse continues to be an unresolved problem for S.L.B. This evidence supports the juvenile court's finding that B.B. is a deprived child.
[¶ 14] The record establishes S.L.B. was assigned two tasks regarding substance abuse: complete an alcohol and drug evaluation and follow the recommendations and submit to random urinalysis testing. Abby Downs, the Social Services Foster Care Manager, testified that S.L.B. completed a substance abuse evaluation prior to July 2006, and it was Social Services' recommendation that he complete an additional evaluation. She testified that even if S.L.B. completed an additional substance abuse evaluation, Social Services did not have a copy because S.L.B. failed to provide a current release for Northeast Human Services Center and he revoked the Veteran's Administration release. Chelsey Williams of the Grand Forks Community Service Office testified that from October 2006 to February 2008, S.L.B. received forty requests for drug tests, he responded to seventeen requests within the correct time frame, eight on the following day, and he refused fifteen requests. In October 2007, S.L.B. tested positive for cocaine. In addition, in February 2008, the Grand Forks County Community Service Office terminated S.L.B. from drug testing as a result of noncompliance. The juvenile court noted that S.L.B. *357 had an opportunity to make alternative arrangements for testing. Only by the court's third hearing, nine months after S.L.B. was terminated from testing, did S.L.B. report that he had made alternative arrangements.
[¶ 15] Shari Fiedler, Supervisor of the Child Protection Program, testified that chemical dependency had been an issue in Social Services' prior assessments of S.L.B. Wade Price, a parole officer with the Department of Corrections, testified that he supervised S.L.B.'s probation for terrorizing and a protection order violation from May 1, 2006, until May 1, 2008. He testified S.L.B. violated the terms of his probation by testing positive for cocaine in October 2007. Price testified that, in February 2008, S.L.B. was hospitalized following consumption of alcohol. Price testified that he is of the opinion S.L.B.'s chemical dependency remains unresolved.
[¶ 16] In his testimony, S.L.B. admitted that he tested positive for cocaine in October 2007, but asserted he was working undercover for the Drug Enforcement Agency and had to provide cover for himself. Steve Hamre of the State Narcotics Task Force testified that S.L.B. was not involved in any operations for law enforcement, and that his explanation for the positive cocaine test was untrue. The court noted that "[w]hile [S.L.B.] wasn't sure as to whether or not his alcohol or drug usage had anything to do with B.B.'s removal from his home, he did state that his behavior did not contribute to the removal." After reviewing the evidence, we conclude the juvenile court's finding that there is clear and convincing evidence of failure to comply with urinalysis testing and continued substance abuse is not clearly erroneous.
[¶ 17] S.L.B. argues the State did not present clear and convincing evidence to support S.L.B.'s continuing need for mental health therapy and counseling. According to a June 2007 sex offender evaluation, S.L.B. has a psychotic disorder due to brain injury and substance abuse. In the 2007 appeal in this case, we stated:
The results of the sex offender evaluation indicated numerous symptoms of depression as well as issues with reality testing, organization of thought, manipulation and delusional beliefs. S.L.B. stated during the interview he believed his hands had "healing energy" and that he had healed adults and children. Testing indicated the presence of Paranoid Schizophrenia or Schizoaffective disorder and indicated that S.L.B. tends to react to stressful situations with physical or verbal aggression. The evaluator noted that S.L.B. "tends to interact with others in a manipulative and self-centered fashion." Among the recommendations made by the evaluator were psychiatric and therapy intervention, although the evaluator noted that testing indicated a poor probability of S.L.B. responding to therapy.
According to the sex offender evaluation, there are several unaddressed mental health issues which would likely have a harmful impact on B.B. if he were returned to S.L.B.'s home.
Interest of B.B., 2008 ND 51, ¶¶ 11-12, 746 N.W.2d 411 (emphasis added). The evaluation, dated June 4, 2007, recommended therapy. S.L.B. attended one counseling session in August 2007. He did not begin counseling sessions again until April 2008. He attended monthly sessions until August 2008 when his therapist indicated that she was unwilling to continue therapy due to her increasing feeling that his was a forensic case or one in which both sides were trying to prove or disprove whether he was a fit parent. S.L.B. argues that Social Services has interfered with and frustrated his efforts at counseling, but the letter *358 from his therapist indicates that she felt both parties contributed to her withdrawal. Furthermore, the juvenile court did not make a finding that Social Services had frustrated S.L.B.'s therapy efforts. The juvenile court found "concerns about S.L.B.'s mental health remain unaddressed through appropriate assessment/therapeutic channels." The record indicates S.L.B. revoked his release for Social Services to obtain information from the Veteran's Administration and his therapist regarding his treatment regime. After reviewing the record, we conclude this left the court without evidence of the treatment recommended and the impact on B.B. The juvenile court's findings that mental health concerns remain that adversely affect his ability to parent B.B. and that S.L.B. indicates an unwillingness to make necessary life changes are not clearly erroneous.

C
[¶ 18] The juvenile court found S.L.B. continues to have unresolved problems with anger management. S.L.B.'s response pattern in the MMPI-2 mental health assessment indicated that he "tends to react to stressful situations with physical or verbal aggression." Price testified that his contact with S.L.B. indicated that S.L.B. had continuing problems with anger and mood swings and that his anger control remains unresolved. Williams testified that she took over S.L.B.'s monitoring after a co-worker reported she felt verbally threatened by S.L.B. Downs also testified that S.L.B. had reacted angrily during their discussions over the phone and in the Children and Family Team meetings. The evidence in the record supports the juvenile court's finding that anger management remains unresolved for S.L.B.

D
[¶ 19] S.L.B. argues there is not clear and convincing evidence to support the juvenile court's finding that S.L.B. has failed to cooperate and provide releases of information to Social Services. Downs testified S.L.B. refused to provide requested information releases. The record reflects that S.L.B. provided a release at first to Social Services. Downs testified that S.L.B. revoked that release for his mental health records. By revoking his release for information, Social Services no longer had access to his mental health files. In addition to releases, Downs also testified that S.L.B. had failed to maintain regular phone contact with Social Services for a period of time. Fiedler testified that S.L.B. had shown "a lack of responsibility for the concerns that have been identified and in turn then lack of follow-through with the services that could have possibly remedied the problems." The record contains clear and convincing evidence to support the juvenile court's finding that S.L.B. indicated an unwillingness to make necessary life changes and complete requisite services to ensure the safety and well-being of B.B. in S.L.B.'s custody and care.
[¶ 20] "When a parent, through voluntary actions, without reasonable justification, makes herself unavailable to care for and parent a young child, the child should not be expected to wait or assume the risk involved in waiting for permanency and stability in her life." Interest of E.R., 2004 ND 202, ¶ 9, 688 N.W.2d 384. The court may also consider whether a parent's conduct has demonstrated "a serious indifference toward her responsibilities and obligations as a parent." Interest of A.K., 2005 ND APP 3, ¶ 9, 696 N.W.2d 160. A deprived child may encompass a child whose parent is presently incapable of providing proper parental care for the child. Interest of T.F., 2004 ND 126, ¶ 11, 681 N.W.2d 786. The juvenile court found:

*359 4. The still untreated issues of both Respondent parents and the unwillingness of both for over two years to make necessary life changes and successfully complete requisite services to ensure the safety and well-being of any children in their custody and care indicate that if B.B. were to be returned to the care, custody and control of either, his deprivation would continue.
While S.L.B. has completed some of the tasks recommended by Social Services, the juvenile court concluded that S.L.B. continued to have problems with substance abuse, mental health, and anger management and that he was not following through with the required urinalysis drug testing or the appropriate rehabilitative therapy and counseling for his mental health and anger management resulting in B.B.'s continued deprivation. The court's finding is not clearly erroneous.

III
[¶ 21] S.L.B. argues that the juvenile court clearly erred in finding that reasonable efforts have been made for reunification. Section 27-20-32.2, N.D.C.C., provides:
1. As used in this section, "reasonable efforts" means the exercise of due diligence, by the agency granted authority over the child under this chapter, to use appropriate and available services to meet the needs of the child and the child's family in order to prevent removal of the child from the child's family or, after removal, to use appropriate and available services to eliminate the need for removal, to reunite the child and the child's family, and to maintain family connections. In determining reasonable efforts to be made with respect to a child under this section, and in making reasonable efforts, the child's health and safety must be the paramount concern.
2. Except as provided in subsection 4, reasonable efforts must be made to preserve families, reunify families, and maintain family connections:
. . . .
b. To make it possible for a child to return safely to the child's home;
. . . .
3. If the court or the child's custodian determined that continuation of reasonable efforts, as described in subsection 2, is inconsistent with the permanency plan for the child, reasonable efforts must be made to place the child in a timely manner in accordance with the permanency plan and to complete whatever steps are necessary to finalize the permanent placement of the child.
The record indicates Social Services has continued to work with S.L.B. since the last deprivation hearing. In March 2007, B.B. was placed with his aunt and uncle in Washington. According to the petition, the permanent plan for B.B. is placement with his paternal aunt and uncle. Social Services has continued to offer services to S.L.B. Downs testified the agency has provided the family with wrap-around case management prior to removal, foster care management since B.B. was removed, regular and Children and Family Team meetings since B.B. has been in foster care, and information and referrals about other services including: therapy through Northeast Human Service Center and the Veteran's Administration, and alcohol and drug testing through the Community Service and Restitution Office. In its findings of fact, the juvenile court found:
1. Reasonable efforts have been expended and ongoing since July 2006 to finalize a permanent plan for minor child B.B. which would allow his safe return to a parental home. Those efforts have *360 included Foster Care Case Management, quarterly Children and Family Team meetings, psychological and parenting assessments as well as psychiatric services, substance abuse services, family and individual therapy, Wishing Well services, Interstate Compact services, probation services, a domestic violence offender treatment program and services through the local Community Violence Intervention Center. Neither parent, however, has taken full advantage of these efforts which have been identified as prerequisites for family reunification.
After reviewing the record evidence, we conclude the juvenile court's finding that Social Services has made reasonable efforts is not clearly erroneous.
[¶ 22] S.L.B. argues that the State has ignored S.L.B.'s progress and is instead looking toward placement based on B.B.'s best interests, and ignoring the statutory minimum standards of care which a community will tolerate. The juvenile court may extend a dispositional order if it finds the child is deprived and reasonable efforts have been provided to finalize the permanent plan or reunify the child with the parents. N.D.C.C. §§ 27-20-03(1)(a); 27-20-30; 27-20-32.2; 27-20-36(4); see generally Interest of B.B., 2008 ND 51, 746 N.W.2d 411. We have concluded the juvenile court did not err when it found B.B. continues to be deprived and reasonable efforts have been expended by Grand Forks County Social Services. Having found the child deprived, the juvenile court found it was in the child's best interest to continue placement with Grand Forks County Social Service Center. The juvenile court's disposition was "best suited to the protection and physical, mental and moral welfare of the child." N.D.C.C. § 27-20-30(1). Because the juvenile court properly applied the statutes in the extension of the disposition order, we hold its findings are not clearly erroneous.

IV
[¶ 23] S.L.B. argues the juvenile court failed to recognize that the guardian ad litem did not adequately represent B.B. and appoint independent legal counsel for B.B. Section 27-20-26, N.D.C.C., provides:
1. Except as otherwise provided in this section, a party who is indigent and unable to employ legal counsel is entitled to counsel at public expense at custodial, post-petition, and informal adjustment stages of proceedings under this chapter. During the informal adjustment stage of a proceeding only the child, if determined to be indigent, is entitled to counsel at public expense. In proceedings regarding allegations of unruliness or delinquency, a child's parent, legal guardian, or custodian, if determined to be indigent, is entitled to counsel at public expense only during the dispositional stage of the proceedings. If a party appears without counsel the court shall ascertain whether the party knows the party may be represented by counsel and that the party is entitled to counsel at public expense if indigent. The court may continue the proceeding to enable a party to obtain counsel and, subject to this section, counsel must be provided for an unrepresented indigent party upon the party's request. Counsel must be provided for a child who is under the age of eighteen years and is not represented by the child's parent, guardian, or custodian at custodial, post-petition, and informal adjustment stages of proceedings under this chapter. If the interests of two or more parties conflict, separate *361 counsel must be provided for each of them.
Section 27-20-48, N.D.C.C., provides:
The court at any stage of a proceeding under this chapter, on application of a party or on its own motion, shall appoint a lay guardian ad litem for a child who is a party to the proceeding if the child has no parent, guardian, or custodian appearing on the child's behalf or their interests conflict with the child's or in any other case in which the interests of the child require a guardian. A party to the proceeding or that party's employee or representative may not be appointed.
Under N.D.C.C. § 27-20-26(1), counsel must be provided for a child who is under the age of eighteen years and is not represented by the child's parent, guardian, or custodian at custodial, post-petition, and informal adjustment proceedings. Here, B.B. was represented by the State through his custodian, Social Services. S.L.B. was represented by counsel. Furthermore, under N.D.C.C. § 27-20-48, the court appointed a guardian ad litem to represent B.B.'s interests. The record supports that B.B.'s interests were adequately represented at the hearing. Therefore, the juvenile court did not err in denying S.L.B.'s request for independent legal counsel for B.B.

V
[¶ 24] S.L.B. argues the juvenile court improperly denied his motion for a personal visit with B.B. and to return B.B. to North Dakota. Parents have a fundamental right to their children, but that right is not absolute and it may be suspended if it is harmful to the child. Guardianship of Barros, 2005 ND 122, ¶ 9, 701 N.W.2d 402. If a child is found to be deprived, the court may transfer temporary legal custody to:
(1) An agency or other private organization licensed or otherwise authorized by law to receive and provide care for the child.
(2) The director of the county social service board or other public agency authorized by law to receive and provide care for the child.
N.D.C.C. § 27-20-30(1)(b). Section 27-20-38, N.D.C.C., explains the rights and duties of a legal custodian:
A custodian to whom legal custody has been given by the court under this chapter has:
1. The right to the physical custody of the child and the right to determine the nature of the care, placement, and treatment of the child, including ordinary medical care as well as medical or surgical treatment for a serious physical condition or illness which in the opinion of a licensed physician requires prompt treatment, except for any limits the court may impose.
2. The right and duty to provide for the care, protection, training, and education and the physical, mental, and moral welfare of the child, subject to the conditions and limitations of the order and to the remaining rights and duties of the child's parents or guardian.
In addition to the rights and duties of a legal custodian, the agency must make reasonable efforts, which means "the exercise of due diligence, by the agency granted authority over the child under this chapter, to use appropriate and available services... to eliminate the need for removal, to reunite the child and the child's family, and to maintain family connections." N.D.C.C. § 27-20-32.2(1). The custodian has an obligation and right to determine the nature of care, placement, and treatment of a child considering the child's best interests. Interest of C.H., 2001 ND 37, *362 ¶ 12, 622 N.W.2d 720. Moreover, "the child's health and safety must be the paramount concern." N.D.C.C. § 27-20-32.2(1). The juvenile court determined:
It is undisputed that the Director of Grand Forks County Social Services is now entrusted with the care, custody and control of young [B.B.] Absent a showing of an abrogation, abuse or dereliction of his responsibilities in this regard, which there has not been to date, this trial court does not intend to interfere with the Director's discharge of statutory duties in this case. [S.L.B.'s] custodial rights with regard to [B.B.] have been suspended, and remained suspended, following a number of hearings.
Moreover, as discussed, Social Services made reasonable efforts to eliminate the need for removal, for reunification, and to maintain family connections. The juvenile court found S.L.B. failed to make a showing of "an abrogation, abuse or dereliction of [the Director of Grand Forks County Social Services's] responsibilities in this regard" to the care, custody, and control of B.B. The juvenile court noted that the permanency hearing was approaching and that if the child, B.B., was no longer deprived, the court would most certainly direct that the child be returned to North Dakota. We conclude the juvenile court did not err in denying S.L.B.'s motions.

VI
[¶ 25] We affirm the juvenile court order extending placement of B.B. with Grand Forks County Social Services for a period of twelve months.
[¶ 26] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.