2012 ND 38

**In the Interest of T.H., a child**

**Heather Pautz, Barnes County Director of Social Services, Petitioner and Appellee,**

v.

**T.H., a Child, A.S., Mother, K.H., Father, Respondents**

**K.H., Father, Appellant.**

No. 20110084.

Supreme Court of North Dakota.

Feb. 17, 2012.

Rehearing Denied March 15, 2012.

Bradley Allen Cruff, Assistant State's Attorney, Valley City, N.D., for petitioner and appellee.

Jonathan T. Garaas, DeMores Office Park, Fargo, N.D., for appellant.

SANDSTROM, Justice.

[¶ 1]   K.H. appeals from juvenile court orders, including an order of disposition

extending placement of his daughter, T.H., in the custody and control of Barnes County Social Services and an order denying his motion to dismiss. He argues the juvenile court lacked jurisdiction, the court applied the wrong standard of proof in finding the child was deprived in 2008, the court erred in allowing his' plea to the allegations of deprivation, the duration of the deprivation proceedings was excessive, and the court erred in finding the child continues to be deprived. We affirm.

I

[¶ 2] On October 3, 2008, the juvenile court entered an order for shelter care, finding there was probable cause the child, T.H., was deprived and ordering the child temporarily be removed from her parents' custody and placed in the custody of Barnes County Social Services for placement in foster care. At the hearing held before the order was entered, the child's father, K.H., was present, and the child's mother, A.S., appeared via telephone. A guardian ad litem was appointed to represent the child's interests in the proceedings.

[¶ 3] On October 31, 2008, a petition was filed alleging the child was deprived. The petition alleged medical and psychological neglect of the child by the father and his wife. The petition also alleged Social Services received three abuse or neglect reports about bruising on the child's face. Documents attached to the petition alleged the child had many mental health problems and recommendations were made to address the child's mental health, the father and his wife did not consistently keep the child's counseling appointments, the child was taken off prescription medication without advice from her doctor, the father and his wife failed to follow recommendations from mental health professionals, the child had various physical injuries, and the child's and her step-mother's explanations for the injuries did not always match.

[¶ 4] On November 21, 2008, a hearing was held on the petition, and the father appeared with his attorney. The parties entered a stipulation agreeing that if the evidence was heard, it was likely the court could find there was clear and convincing evidence the alleged events had occurred. On November 24, 2008, the juvenile court entered an order finding the child was deprived and ordering the child be placed in Social Services' care, custody, and control. The order stated it would remain in effect for no more than twelve months.

[¶ 5] In September 2009, a permanency hearing was held, and the father and the mother both appeared at the hearing. The court ordered the child continue to be placed in Social Services' custody, the father and his wife to attend family counseling, and the father's wife to attend individual counseling. The order was effective until March 2010.

[¶ 6] In December 2009, a second permanency hearing was held, and both of the child's parents appeared. The court found it was contrary to the child's welfare to return her to her home until her father and his wife addressed other problems through counseling and ordered the child's placement continue. The order was effective until March 2010.

[¶ 7] In March 2010, a third permanency hearing was held, and both parents appeared at the hearing. The court found it was contrary to the child's welfare to return home and ordered the placement continue. The order remained in effect until September 2010.

[¶ 8] On August 19, 2010, the father filed an objection and requested the matter be dismissed, arguing the court failed to find the child was a deprived child as

required by law in the November 2008 order and claiming the court cannot extend the child's placement in foster care after October 2010 because placement in foster care cannot exceed a total of twenty-four months under N.D.C.C. § 27–20–36. On September 1, 2010, the court overruled the father's objection. The court found "the parties stipulated at the initial deprivation hearing that there was clear and convincing evidence to find that [the child] was a deprived child and this Court had subject matter and personal jurisdiction to enter an order." The court also ruled the father's argument about a two-year limit on foster care was not supported by the law.

[¶ 9] On October 28, 2010, the court entered an order continuing the matter and extending Social Services' custody of the child until December 2010.

[¶ 10] A permanency hearing was held in December 2010. During the hearing, the father moved for dismissal, arguing the child was no longer a deprived child and the court lacked jurisdiction. The mother joined the father's motion. On December 23, 2010, the father filed a written motion for dismissal, arguing the court lacked personal jurisdiction, he was not properly served with the petition in 2008, there is no proof the mother was served with the petition, the child was not served as N.D.C.C. § 27–20–23 requires, and all of the parties had to be properly served for the court to acquire jurisdiction. The father also argued the child is no longer deprived and the purposes of the original order finding the child is deprived have been accomplished.

[¶ 11] On January 24, 2011, the court entered an order continuing the child's current placement until the matter could be fully heard. The order remained in effect until June 1, 2011.

[¶ 12] In March 2011, arguments were held on the motions to dismiss. On March 24, 2011, the court denied the motions to dismiss, finding the father and the mother did not properly preserve the personal jurisdiction issue because they failed to raise the issue when the proceedings began in 2008. The court also found the father and his wife were ordered to participate in counseling but their participation was sporadic, the father failed to make a good-faith effort to participate in counseling to rectify the child's psychological neglect, and the child continued to be deprived. The court ordered the child's placement would continue and the order would remain in effect until June 1, 2011.

[¶ 13] The father filed a notice of appeal, stating he was appealing multiple orders, including the order overruling his objection, the October 2010 order for continuance, the January 2011 order of disposition, and the March 2011 order denying the motions to dismiss.

[¶ 14] The juvenile court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–20–03(1)(a). The appeal was timely under N.D.C.C. § 27–20–56(1). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 27–20–56(1).

II

[¶ 15] The father argues the juvenile court lacked jurisdiction because the parties were not properly served with the initial summons and petition. He claims he did not receive some of the documents that were supposed to be attached to the petition, and he contends there is no evidence the mother or the child were ever served with the initial petition.

[¶ 16] A court must have both subject matter and personal jurisdiction to issue a valid order or judgment. *Investors Title Ins. Co. v. Herzig*, 2010 ND 138, ¶ 57, 785 N.W.2d 863. Personal jurisdiction is

the court's power over a party. *Id.* The court acquires personal jurisdiction through service of process or by voluntary general appearance in the action, either personally or through an attorney or other authorized person. N.D.R.Civ.P. 4(b)(4). " 'In the absence of a previously made and properly preserved objection to the jurisdiction of the trial court, a general appearance amounts to a waiver of the right to object to the jurisdiction of the court over the person of the appearing party.' " *Investors Title,* at ¶ 64 (quoting *Grey Bear v. North Dakota Dep't of Human Servs.,* 2002 ND 139, ¶ 30, 651 N.W.2d 611).

[¶ 17] The father claims he was not properly served with the initial deprivation petition. However, he appeared at the November 21, 2008, hearing on the petition, and he did not object to the court's jurisdiction or argue he had not been properly served. Furthermore, the father appeared at various hearings, including three permanency hearings, without objecting to the court's jurisdiction. The father waived any claim that the court lacked jurisdiction.

[¶ 18] The father also contends there is no evidence the mother and the child were properly served with the initial petition, and he claims the court must have personal jurisdiction over all of the parties to enter a valid order. First, the father does not have standing to assert defenses on behalf of third parties. *See In re J.D.F.,* 2010 ND 160, ¶ 14, 787 N.W.2d 738 (a party must have standing to litigate the issues and a party generally cannot rest his claim on the legal rights of another). Second, although the mother was not present at the November 21, 2008, hearing, she did appear at the subsequent hearings without objecting to the court's jurisdiction. Under N.D.C.C. § 27–20–22(1), a child must be served only if the child is at least fourteen years old. In this case, the child was nine years old when the petition was filed, and therefore the child did not need to be served with the summons and petition. Furthermore, a guardian ad litem was appointed to represent the child's interests, and the guardian ad litem appeared at the hearings on the child's behalf.

[¶ 19] We conclude the juvenile court had personal jurisdiction and did not err in denying the father's motion to dismiss.

### III

[¶ 20] The father argues the court applied the wrong evidentiary standard in finding the child was deprived in 2008 and the court erred in allowing an *Alford* plea to the allegations of deprivation. The father failed to raise these issues until 2010, and he did not appeal the 2008 order of disposition finding the child is deprived. A final order finding a child is deprived is appealable under N.D.C.C. § 27–20–56(1). A party may not collaterally attack a final decision, that was not appealed, in subsequent proceedings. *See In re Guardianship and Conservatorship of G.L.,* 2011 ND 10, ¶ 11, 793 N.W.2d 192; *In re R.K.E.,* 1999 ND 106, ¶¶ 18–19, 594 N.W.2d 702. If the father believed the court applied the wrong evidentiary standard and erred in accepting his stipulation, his remedy was to timely appeal that order. Because he did not appeal the 2008 order, he waived these issues.

### IV

[¶ 21] The father argues the duration of the deprivation proceedings has been excessive. He contends the child's placement in foster care should have ended in October 2010 because a child's placement in foster care cannot exceed a total of twenty-four months under N.D.C.C. § 27–20–36(3).

[¶ 22] The interpretation of a statute is a question of law, which is fully reviewable on appeal. *In re R.A.*, 2011 ND 119, ¶ 24, 799 N.W.2d 332. In interpreting a statute, we look at the plain language of the statute and give each word its plain and ordinary meaning unless a contrary intention plainly appears. *Id.;* see also N.D.C.C. § 1–02–02. If a statute is ambiguous we may look to extrinsic aids to interpret its meaning. *R.A.*, at ¶ 24; see also N.D.C.C. § 1–02–39. A statute is ambiguous if it is susceptible to different, rational meanings. *R.A.*, at ¶ 24.

[¶ 23] Section 27–20–36, N.D.C.C., provides for time limitations on orders of disposition in juvenile cases, and states:

3. Except as provided in subsection 2, [which applies in cases of delinquent or unruly children,] an order of disposition pursuant to which a child is placed in foster care may not continue in force for more than twelve months after the child is considered to have entered foster care. Before the extension of any court order limited under this subsection, a permanency hearing must be conducted. Any other order of disposition may not continue in force for more than twelve months.

4. Except as provided in subsection 1, [an order terminating parental rights,] the court may terminate an order of disposition before the expiration of the order or extend its duration for further periods. An order of extension may be made if:

a. A hearing is held before the expiration of the order upon motion of a party or on the court's own motion;

b. Reasonable notice of the hearing and opportunity to be heard are given to the parties affected;

c. The court finds the extension is necessary to accomplish the purposes of the order extended; and

d. The extension does not exceed twelve months from the expiration of an order limited by subsection 3 or two years from the expiration of any other limited order.

[¶ 24] The plain language of N.D.C.C. § 27–20–36 provides that an order of disposition, which places a child in foster care, may not continue in force for more than twelve months. The statute also provides that an order of disposition placing a child in foster care may be extended for up to an additional twelve months after a permanency hearing is held. Under the plain language of the statute, a single order placing a child in foster care may not be in effect for longer than twelve months, but each order may be extended for an additional twelve months. The statute does not state that an order placing a child in foster care may be extended only one time and a child may be placed in foster care for a total of only twenty-four months. The statute does not limit the number of times an order of disposition may be extended; rather, the statute limits the length of time each order may remain in effect and provides other requirements for extending the order.

[¶ 25] In this case, the 2008 order of disposition placing the child in foster care remained in effect for less than twelve months. The order was extended multiple times after the court held permanency hearings, and each order remained in effect for no longer than twelve months. We conclude the duration of the deprivation proceedings is not excessive and the court complied with N.D.C.C. § 27–20–36.

V

[¶ 26] The father argues the court erred in finding the child continues to be a

deprived child. He claims all of the conditions that led to the child's removal from the home no longer exist and the child should be returned to his custody.

[¶ 27] Whether a child is deprived is a finding of fact, and a juvenile court's findings of fact will not be reversed on appeal unless they are clearly erroneous. *In re B.B.* ("*B.B.I*"), 2008 ND 51, ¶ 4, 746 N.W.2d 411. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence to support the finding, or this Court is convinced, on the basis of the entire record, that a mistake has been made. *Id.* We give the juvenile court due regard because the juvenile court has the opportunity to assess the credibility of the witnesses. *Id.*

[¶ 28] A disposition order regarding a deprived child may be extended if a hearing is held before the order's expiration, the parties are given reasonable notice and an opportunity to be heard, the court finds the extension is necessary to accomplish the purposes of the order, and the extension does not exceed twelve months. N.D.C.C. § 27–20–36(4). The juvenile court must also find that the child remains deprived as defined by N.D.C.C. § 27–20–02(8). *B.B.I,* 2008 ND 51, ¶ 5, 746 N.W.2d 411.

[¶ 29] A child is deprived if the child is without proper parental care or control, subsistence, education, or other care or control necessary for the child's physical, mental, or emotional health, or morals, or the child is in need of treatment and the child's parents have refused to participate in treatment as ordered by the juvenile court. N.D.C.C. § 27–20–02(8)(a) and (e). The petitioner must establish the child is deprived by clear and convincing evidence. *In re B.B.* ("*B.B.II*"), 2010 ND 9, ¶ 6, 777 N.W.2d 350. "[P]arental cooperation, or a lack thereof, is pertinent to determining if deprivation will continue." *B.B.II,* at ¶ 7. We have said, "[A] pattern of parental conduct can form a basis for a reasonable prediction of future behavior." *B.B.I,* 2008 ND 51, ¶ 9, 746 N.W.2d 411. " '[E]vidence of the parent's background, including previous incidents of abuse and deprivation, may be considered in determining whether deprivation is likely to continue.' " *Id.* (quoting *In re L.F.,* 1998 ND 129, ¶ 16, 580 N.W.2d 573). The court may also consider whether the parent's conduct demonstrates " 'a serious indifference toward her responsibilities and obligations as a parent.' " *B.B.II,* at ¶ 20 (quoting *In re A.K.,* 2005 ND APP 3, ¶ 9, 696 N.W.2d 160).

[¶ 30] The father claims the child is no longer deprived and the purposes of the original disposition order have been accomplished, including that other individuals who contributed to the child's abuse no longer live in the home, that the child no longer poses a threat to her family, that the child is no longer on medication, and that he and his wife have accomplished all of the goals originally established for them.

[¶ 31] In the 2008 disposition order, the juvenile court found, on the basis of the parties' stipulation without admitting the specific allegations, the child was deprived because there was medical and psychological neglect by the father and his wife, the father and his wife took the child off medication prescribed by her psychiatrist against medical advice, the father and his wife did not follow through consistently with counseling appointments, the child had bruising on her face, Social Services received three reports about the bruising, and the child continued to have scratches and bruises after social services intervention. The court ordered the child be removed from the

home and placed in foster care; the child continue to participate in individual counseling and take any prescribed medications; the father and his wife attend family counseling if recommended by the child's counselor; the father, his wife, and the mother complete a parental capacity or psychological evaluation and comply with any recommendations; and the father and his wife participate in a parenting class. In the September 2009 order of disposition, the court also ordered the father and his wife to attend family counseling and his wife to attend individual counseling.

[¶ 32] In the juvenile court's March 2011 order denying the father's motion to dismiss, the court found the child was removed from the home because of medical and psychological neglect and she continues to be deprived because the father's and his wife's participation in the ordered counseling has been sporadic and unfruitful and the father has not put forth a good-faith effort to meaningfully participate in the ordered counseling to rectify the issue of psychological neglect. The court found the father is not currently able to provide proper parental care necessary for the child's physical, mental, or emotional health.

[¶ 33] The evidence from the December 2010 permanency hearing supports the court's findings. Social worker Sheila Oye testified social services has tried to establish regularly scheduled family therapy sessions, requested the father's wife participate in individual therapy, and requested the father and his wife have marital therapy. Oye testified the father's and his wife's participation in therapy was sporadic, family therapy sessions had not been held since July 2010, and the father's and his wife's participation in the marital therapy and the father's wife's participation in individual therapy had been unsatisfactory and they reported they had not been participating in either type of therapy.

[¶ 34] Stacey Meehl, the father's wife's individual counselor, testified the father's wife's participation in counseling was sporadic and she ended the counseling in September 2010 without explanation. She testified they were making slow progress toward the counseling goals but the father's wife stopped participating without successfully completing the goals.

[¶ 35] Deborah Elhard, the father's and his wife's marital therapy counselor, testified they attended eight counseling sessions but stopped participating in May 2010. She testified they were making progress toward the therapy goals but the goals were not completed before they stopped participating.

[¶ 36] The child's counselor, David Listul, testified he has been the child's counselor since February 2007, but his sessions with the child were infrequent until she was removed from the home in October 2008. Listul testified the family counseling sessions were infrequent and he did not feel the family was making progress toward reunification because of the infrequency of the sessions and the content of the meetings, there had not been an acknowledgment of abuse, and the father and his wife did not seem to be putting forth the effort for reunification. He testified he was concerned the child would be harmed if she were returned to the father's home.

[¶ 37] There was evidence the father and his wife have a history of failing to cooperate with social services and that failure was part of the basis for the initial finding that the child is deprived. There was evidence the father and his wife have not completed the ordered counseling or made a good-faith effort to participate in the counseling, and they continue to fail to cooperate. A lack of parental cooperation is relevant in deciding that a child remains

deprived and that deprivation will continue. *B.B.II,* 2010 ND 9, ¶ 7, 777 N.W.2d 350; *see also In re K.B.,* 2011 ND 152, ¶ 27, 801 N.W.2d 416 (a lack of cooperation with social services indicates the causes and conditions of deprivation are likely to continue); *In re N.W.,* 510 N.W.2d 580, 582–83 (N.D.1994) (extending placement in foster care was appropriate when court was concerned with the history of antagonism and lack of cooperation between parents and social services). Upon reviewing the record, we conclude there is evidence to support the court's findings, and we are not convinced a mistake has been made. The juvenile court's finding that the child continues to be a deprived child is not clearly erroneous.

## VI

[¶ 38] We conclude the juvenile court had jurisdiction, the duration of the child's placement in foster care is not excessive, and evidence supports the court's finding that the child continues to be deprived. We affirm.

[¶ 39] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, MARY MUEHLEN MARING and CAROL RONNING KAPSNER, JJ., concur.